Lillie M. Coley, PhD,
3900 City Avenue Apt M420
Philadelphia, PA 19131
215-620-0278
lmcoley@comcast.net

*Plaintiff In Pro Per*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIE COLEY, an Individual | Case No.: 2:25-cv-04216-SPG |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; AND PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE; AND PLAINTIFFS MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; AND MEMORANDUM OF LAW & AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| SHAWN COREY CARTER, an Individual | |
| Defendant | |
| | **Assigned to Hon. Sherilyn Peace Garnett, Courtroom 5C** |

## TO THE HONORABLE COURT:

Plaintiff Lillie Coley, in pro per, respectfully opposes Defendant's Motion to Dismiss pursuant to Federal Rules 12(b)(1), 12(b)(5), and 12(b)(6), and vehemently opposes Defendant's Special Motion to Strike pursuant to California Code of Civil Procedure § 425.16. Plaintiff concurrently moves for leave to file her First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## II. LEGAL STANDARDS
### A.  LEAVE TO AMEND STANDARD

Federal Rule 15(a)(2) mandates that courts "should freely give leave when justice so requires." The Supreme Court established in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that leave should be denied only for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." The Ninth Circuit emphasizes that "leave to amend should be granted unless there is a strong showing of any of the Foman factors." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B.  ANTI-SLAPP MOTION STANDARD

California's anti-SLAPP statute protects only legitimate exercise of constitutional rights, not criminal conduct that corrupts judicial proceedings. In *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006), the California Supreme Court held that the statute "does not protect speech or petitioning activity that is per se illegal."

## III. GROUNDS FOR RELIEF
### A.  LEAVE TO AMEND MUST BE GRANTED

All *Foman* factors overwhelmingly favor granting leave to amend. **No Undue Delay:** This represents Plaintiff's first opportunity to amend, filed promptly after receiving Defendant's motion. **No Bad Faith:** The amendment directly responds to procedural concerns while strengthening substantive claims. **Enhanced Pleadings:** The First Amended Complaint provides comprehensive factual allegations meeting Rule 9(b) requirements, strengthened jurisdictional analysis, and detailed statute of limitations arguments under California tolling doctrines. **Judicial Efficiency:** Granting leave serves

efficiency by resolving all procedural issues in a comprehensive pleading rather than piecemeal litigation.

## B. Defendant's Motion to Dismiss Fails

As detailed in the accompanying Memorandum of Points and Authorities, Defendant's motion fundamentally mischaracterizes both law and facts:

1. **Rooker-Feldman Does Not Apply:** Plaintiff seeks tort damages for Defendant's independent fraudulent conduct—not appellate review of state court decisions. The well-established "extrinsic fraud exception" permits federal courts to address systematic fraud that corrupted state court proceedings. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).

2. **Service Challenges Fail:** Actual notice was achieved, as demonstrated by Defendant's detailed 25-page motion showing complete knowledge of the lawsuit's contents and substance.

3. **Enhanced Pleadings Satisfy All Requirements:** The First Amended Complaint provides specific factual allegations necessary to survive Rule 12(b)(6) analysis under *Twombly* and *Iqbal* standards.

## C. Special Motion to Strike Must Be Denied

Defendant's anti-SLAPP motion fails on both prongs and represents a perverse attempt to weaponize protective legislation to shield systematic criminal conduct.

1. **No Protected Activity:** The conduct challenged—perjury, systematic concealment from courts, and obstruction of justice—constitutes criminal activity under California Penal Code § 118, 18 U.S.C. § 1503, and Business and Professions Code § 6128. Criminal conduct falls entirely outside anti-SLAPP protection under the "illegality exception" established in Rusheen v. Cohen, 37 Cal. 4th 1048, 1057-58 (2006).

a. **Overwhelming Probability of Prevailing:** Plaintiff possesses documentary evidence proving systematic fraud:

b. **Tax records** conclusively demonstrating Carter was a New Jersey resident during periods when his counsel argued he owned no property there

c. **Court transcripts** documenting false representations about jurisdictional contacts

d. **Recent evidence** including 2024 escrow seizure and January 2025 Banking Commission findings confirming ongoing misconduct

2. **Fraud Upon the Court Exception:** Defendant's systematic campaign to defraud state courts through false statements under oath and concealment of material jurisdictional facts constitutes fraud upon the court—conduct never considered protected petitioning activity.

## D. FEE-SHIFTING MUST BE DENIED

1. **Public Policy Against Rewarding Fraud:** Awarding fees to Defendant would reward twenty years of systematic evasion and pervert the anti-SLAPP statute's purpose of protecting legitimate petitioning activity, not subsidizing criminal conduct.

2. **Constitutional Concerns:** Fee-shifting in favor of a defendant who systematically evaded legal responsibilities while imposing financial hardship on the Plaintiff raises serious equal protection concerns.

3. **Pro Se Litigant Rights:** Despite pro se status, Plaintiff has produced professional-quality legal work requiring substantial investment of time and expertise. Courts recognize that forcing individual plaintiffs to bear disproportionate litigation costs against well-funded defendants effectively denies access to justice.

# IV. CORE LEGAL THEORY

This case involves **extrinsic fraud**—deliberate and sophisticated deception that transcends any legitimate exercise of litigation rights. Defendant systematically corrupted the judicial process itself through a campaign of systematic perjury, repeatedly denying property ownership under oath while simultaneously possessing substantial New Jersey properties that would establish clear jurisdictional grounds. This deception was orchestrated through coordinated legal subterfuge spanning multiple jurisdictions and law firms, creating a web of false narratives designed to prevent any court from obtaining proper jurisdiction. Rather than defending legitimate claims through honest advocacy, Defendant weaponized legal processes to prevent substantive examination of his conduct entirely. The scheme continues through present-day violations, as evidenced by the 2024 escrow seizure of Plaintiff's funds and the January 2025 Banking Commission findings confirming ongoing financial misconduct.

This conduct represents a coordinated assault on judicial integrity rather than any form of protected litigation activity. The systematic nature of Defendant's deception—spanning decades, multiple jurisdictions, and involving coordination with numerous legal professionals—demonstrates a calculated effort to corrupt the very foundations of judicial authority. Federal intervention is essential to vindicate constitutional principles ensuring equal justice under law and to demonstrate that no individual, regardless of wealth or celebrity status, may systematically undermine the judicial process to evade legal accountability.

# V. JUDICIAL EFFICIENCY AND PUBLIC POLICY

Compelling public policy considerations demand full adjudication. When allegations involve systematic abuse of legal process by individuals wielding extraordinary wealth and influence, the

public interest strongly favors complete adjudication rather than dismissal on technical grounds. The

protection of constitutional rights becomes critical when defendants possess vast resources deployed to

manipulate legal proceedings across multiple jurisdictions. Allowing these claims to proceed serves

the essential deterrent function, demonstrating that no individual, regardless of celebrity status or

financial resources, stands above the law.

# VI. RELIEF SOUGHT

**WHEREFORE** Plaintiff respectfully requests that this Court:

1. **DENY** Defendant's Motion to Dismiss in its entirety;

2. **DENY** Defendant's Special Motion to Strike pursuant to CCP § 425.16;

3. **DENY** any award of attorney's fees to Defendant;

4. **GRANT** Plaintiff's Motion for Leave to File First Amended Complaint; and

5. **ORDER** that Defendant file his responsive pleading to the First Amended Complaint

    within the time prescribed by the Federal Rules of Civil Procedure.


Respectfully submitted,


s/ Dr. Lillie M. Coley
Lillie M. Coley, PhD
3900 City Avenue Apt M420
Philadelphia, PA 19131
215-620-0278
lmcoley@comcast.net
*Plaintiff In Pro Per*

DATED: September 16, 2025

1  Lillie M. Coley, PhD,
   3900 City Avenue Apt M420
2  Philadelphia, PA 19131
   215-620-0278
3  lmcoley@comcast.net

4  *Plaintiff In Pro Per*

5

6

7              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
8

9  LILLIE COLEY, an Individual         | Case No.: 2:25-cv-04216-SPG

10            Plaintiff,
                                       | **PLAINTIFF'S MEMORANDUM OF**
11         vs.                         | **LAW IN SUPPORT OF PLAINTIFF'S**
                                       | **OPPOSITION TO MOTION TO**
12  SHAWN COREY CARTER,                | **DISMISS AND SPECIAL MOTION TO**
                                       | **STRIKE.**
13         Defendants

14
                                       | **Assigned to Hon. Sherilyn Peace**
15                                     | **Garnett, Courtroom 5C**

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1

# Table of Contents

TABLE OF AUTHORITIES............................................................................................................4

I.    EXECUTIVE SUMMARY ..........................................................................................7
    WHY DEFENDANT'S ARGUMENTS FAIL:....................................................................7

II.   MOTION FOR LEAVE TO AMEND ....................................................................1
    A. LEGAL STANDARD FOR LEAVE TO AMEND ..........................................................1
    B. FACTORS SUPPORTING AMENDMENT ...................................................................1

III.  OPPOSITION TO MOTION TO DISMISS...........................................................2
    A. ROOKER-FELDMAN DOCTRINE DOES NOT APPLY ...............................................2
      1. Legal Standard..................................................................................................2
      2. Extrinsic Fraud Exception ................................................................................3
      3. Application to This Case....................................................................................3
      4. Relief Sought Is Remedy for Fraud, Not Appeal..............................................5
    B. SERVICE OF PROCESS CHALLENGES FAIL..............................................................5
      1. Legal Standard..................................................................................................5
      2. Substantial Compliance and Actual Notice......................................................5
      3. Celebrity Status Creates Unique Challenges....................................................5
      4. Enhanced Allegations in First Amended Complaint ........................................6
    C. ANTI-SLAPP CHALLENGES ARE MERITLESS........................................................6
      1. Illegality Exception...........................................................................................6
      2. Defendant's Conduct Falls Outside Protection ...............................................6
      3. Litigation Privilege Does Not Shield Criminal Fraud .....................................6
      4. Distinguished from Legitimate Litigation Activity...........................................7
    D. RULE 12(B)(6) CHALLENGES FAIL ON ENHANCED PLEADINGS ............................7
      1. Fraud Claims Satisfy Rule 9(b)........................................................................7
      2. Abuse of Process Properly Pleaded..................................................................7
      3.    Emotional Distress Claims Fully Supported ..............................................8

III. STATUTE OF LIMITATIONS ARGUMENTS FAIL ............................................9
    A. Multiple California Tolling Doctrines Apply ...............................................9
    1. Fraudulent Concealment ...................................................................................9
    2. Continuing Violation Doctrine ..........................................................................9
    3. Delayed Discovery Rule....................................................................................9
    B. RECENT ACTS BRING CLAIMS WITHIN LIMITATIONS PERIOD ..............................10
      1. The 2024 Escrow Account Seizure: A Fresh Violation...................................10
      2. The January 2025 Banking Commission Findings: Continuing Pattern Confirmed ...........10
      3. Legal Standard for Continuing Violations.......................................................11
      4. The Practical Justice of the Continuing Violation Doctrine ...........................11
      5. Distinguishing Completed vs. Ongoing Harms................................................12
      6. Policy Considerations Support Application......................................................12

IV.  DISTINGUISHING DEFENDANT'S CASES ......................................................13
    A. ROOKER-FELDMAN CASES SUPPORT PLAINTIFF'S POSITION ...............................13
      1. Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004) ..............................13
      2.    Bianchi v. Rylaarsdam, 334 F.3d 895 (9th Cir. 2003)..............................14
      3.    Doe & Assocs. L. Offs. v. Napolitano, 252 F.3d 1026 (9th Cir. 2001).......15
    B. ANTI-SLAPP AND LITIGATION PRIVILEGE CASES CONTAIN CRITICAL EXCEPTIONS ...16
    C. PLEADING STANDARD CASES SUPPORT ENHANCED ALLEGATIONS ......................19
    D. SUMMARY: DEFENDANT'S CASES SUPPORT PLAINTIFF'S POSITION......................21

V.   WHY THIS CASE DIFFERS FROM PREVIOUS DISMISSED FEDERAL CASES ...........................22
    A.    DIFFERENT LEGAL THEORIES AND DEFENDANTS.................................................22

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

B. INDEPENDENT TORT CLAIMS VS. JUDICIAL CHALLENGES ........................................................23
C. ENHANCED FACTUAL DEVELOPMENT ..................................................................................23

VI.   WHY CLAIMS AREN'T BARRED BY RES JUDICATA ................................................24

A.    NO SUBSTANTIVE ADJUDICATION ON MERITS ...............................................................24
      Legal Standard for Res Judicata: ..............................................................................24
      Application to State Court Orders: .............................................................................24
B. DIFFERENT PARTIES AND CLAIMS .................................................................................25
C. EXTRINSIC FRAUD EXCEPTION.....................................................................................25

VII.  WHY ALLOWING AMENDMENT SERVES JUDICIAL EFFICIENCY .......................26

A. COMPREHENSIVE RESOLUTION .....................................................................................26
B. SUBSTANTIVE MERIT DETERMINATION .........................................................................26
C. JUDICIAL RESOURCES AND EFFICIENCY ........................................................................27
D. PUBLIC INTEREST IN ACCOUNTABILITY .........................................................................27

VIII. OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE UNDER CCP § 425.16 ..................28

A. THE ANTI-SLAPP STATUTE DOES NOT APPLY BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE FROM PROTECTED
ACTIVITY ......................................................................................................................28
B. EVEN IF PROTECTED ACTIVITY EXISTED, PLAINTIFF DEMONSTRATES CLEAR PROBABILITY OF PREVAILING .............29
C. FEE-SHIFTING PROVISIONS SHOULD NOT APPLY ............................................................30
D. PLAINTIFF'S ENTITLEMENT TO COMPENSATION DESPITE PRO SE STATUS ...........................31
      E. Conclusion on Special Motion to Strike ................................................................31

IX.   CONCLUSION ...........................................................................................................32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Cases                                                                          Page(s)

783 F.3d at 763 ............................................................................................ 21
*Alyeska Pipeline Service Co. v. Wilderness Society,*
  421 U.S. 240 (1975) .................................................................................... 30
*Aryeh v. Canon Business Solutions, Inc.,*
  55 Cal. 4th 1185 (2013)............................................................................ 10, 23
*Astiana v. Hain Celestial Group, Inc.,*
  783 F.3d 753 (9th Cir. 2015) ........................................................................ 21
*Barrow v. Hunton,*
  99 U.S. 80 (1878) ........................................................................................ 14
2. Bianchi v. Rylaar,
  dam, 334 F.3d 895 (9th Cir. 2......................................................................... 2, 14
*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ................................................................................. 27, 33
*City of Cotati v. Cashman,*
  29 Cal. 4th 69 (2002)................................................................................... 28
*Conley v. Gibson,*
  355 U.S. 41 (1957) ...................................................................................... 27
*Crowley v. Katleman,*
  8 Cal. 4th 666 (1994)................................................................................... 25
*Dennis v. Sparks,*
  449 U.S. 24 (1980) ...................................................................................... 23
3. Doe & Assocs. L. Offs. v. Napoli,
  ano, 252 F.3d1026 (9th Cir. 2......................................................................... 2, 15
*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003) ...................................................................... 2, 27
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.,*
  544 U.S. 280 (2005) .................................................................................... 16
*Federation of Hillside & Canyon Associations v. City of Los Angeles,*
  83 Cal. App. 4th 1252 (2000)........................................................................ 24
*Flatley v. Mauro,*
  39 Cal. 4th 299 (2006) ............................................................................ 2, 18, 28
*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................... 2, 1, 26
*Forrester v. White,*
  484 U.S. 219 (1988) .................................................................................... 22
*Hagberg v. California Federal Bank,*
  32 Cal. 4th 350 (2004).................................................................................. 17
*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*
  322 U.S. 238 (1944) .................................................................................... 15
In re Stac Electronics Securities Litigation,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................ 20

*Jolly v. Eli Lilly & Co.,*
   44 Cal. 3d 1103 (1988) ........................................................................................... 12
*JSJ Ltd. Partnership v. Mehrban,*
   205 Cal. App. 4th 1512 (2012) ............................................................................... 20
*Kay v. Ehrler,*
   499 U.S. 432 (1991) ............................................................................................... 31
*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ..................................................................... 19, 20, 24
*Kougasian v. TMSL, Inc.,*
   359 F.3d 1136 (9th Cir. 2004) .......................................................................... Passim
*Lucido v. Superior Court,*
   51 Cal. 3d 335 (1990) ............................................................................................ 25
*Marshall v. Holmes,*
   141 U.S. 589 (1891) ............................................................................................... 26
*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ............................................................................................... 30
*Mireles v. Waco,*
   502 U.S. 9 (1991) .................................................................................................. 23
*Mycogen Corp. v. Monsanto Co.,*
   28 Cal. 4th 888 (2002) ........................................................................................... 25
*Romano v. Rockwell Intl., Inc.,*
   14 Cal. 4th 479 (1996) ........................................................................................... 11
Rusheen v. Cohen,
   37 Cal. 4th 1048 (2006) ..................................................................................... 3, 18
*Silberg v. Anderson,*
   50 Cal. 3d 205 (1990) ....................................................................................... 16, 17
*Stump v. Sparkman,*
   435 U.S. 349 (1978) ............................................................................................... 22
*United States ex rel. Bell v. Pierson,*
   267 F.3d 544 (7th Cir. 2001) .................................................................................. 19
*Zamora v. Clayborn Contracting Group, Inc.,*
   28 Cal. 4th 249 (2002) ........................................................................................... 25

Statutes

18 U.S.C. § 1503 ............................................................................................... 3, 6, 19
18 U.S.C. § 1621 ....................................................................................................... 19
Business and Professions Code § 6128 ............................................................. 3, 6, 19
Cal. Civ. Code § 47(b)(3)-(5) ..................................................................................... 16
California Civil Code § 47(b) ...................................................................................... 16
California Code of Civil Procedure § 425.16 ............................................................. 16
California Penal Code § 118 ............................................................................. 1, 6, 3, 28
CCP § 425.16(b)(1) ............................................................................................. 3, 6, 19
CCP § 425.16(c) ........................................................................................................ 28
Civil Code § 47 ......................................................................................................... 30
Code of Civil Procedure § 338 ..................................................................................... 9

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Rules

Federal Rule of Civil Procedure 15(a)(2) ........................................................................................ 1, 2
Federal Rules 12(b)(1), 12(b)(5), and 12(b)(6)................................................................................ 1
Rule 12(b)(6)......................................................................................................................................... 3, 2

## TO THE HONORABLE COURT:

Plaintiff Lillie Coley respectfully submits this Opposition to Defendant's Motion to Dismiss and concurrently moves for leave to file her First Amended Complaint, which cures any deficiencies in the original pleading while demonstrating that Defendant's motion fundamentally mischaracterizes both the law and the factual allegations.

# I.    EXECUTIVE SUMMARY

This opposition addresses Defendant Shawn Corey Carter's Motion to Dismiss, which fundamentally mischaracterizes both the law and Plaintiff's claims. Defendant seeks dismissal based on four arguments: (1) inadequate service of process, (2) lack of subject matter jurisdiction under Rooker-Feldman, (3) anti-SLAPP protections, and (4) failure to state a claim. Each argument fails.

Core Legal Theory: Plaintiff brings independent tort claims for extrinsic fraud—not an appeal of state court decisions. Defendant systematically defrauded multiple state courts by concealing material jurisdictional facts, making false statements under oath, and obstructing justice to avoid paternity testing and support obligations. This conduct prevented fair adjudication and falls entirely outside litigation privilege protections.

## WHY DEFENDANT'S ARGUMENTS FAIL:

- **Service:** Actual notice was achieved, as demonstrated by Defendant's detailed motion showing complete knowledge of the lawsuit

- **Rooker-Feldman:** Does not apply to extrinsic fraud claims that challenge the fraudulent conduct leading to judgments, not the judgments themselves

- **Anti-SLAPP:** Contains an "illegality exception" for criminal conduct like perjury and fraud upon the court

1     •   **Pleading:** The First Amended Complaint provides enhanced factual allegations meeting all

2        Rule 9(b) requirements

## II.   MOTION FOR LEAVE TO AMEND
### A. LEGAL STANDARD FOR LEAVE TO AMEND

Federal Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." Leave should be denied only for undue delay, bad faith, repeated failures to cure deficiencies, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). All factors strongly support granting leave here.

### B. FACTORS SUPPORTING AMENDMENT

**The Absence of Undue Delay Counsels Strongly in Favor of Amendment.** Plaintiff filed the original complaint in May 2025 and now seeks amendment promptly upon receiving Defendant's motion to dismiss. This timeline reflects neither dilatory tactics nor strategic gamesmanship, but rather the natural progression of litigation where a plaintiff responds expeditiously to legitimate procedural challenges. This represents Plaintiff's first opportunity to amend her pleadings, and the law favors allowing plaintiffs to cure technical deficiencies when they act with appropriate dispatch.

**Good Faith Permeates Every Aspect of This Amendment.** The proposed amendments represent a direct and conscientious response to the procedural concerns articulated in Defendant's motion, while simultaneously fortifying the substantive foundation of Plaintiff's claims. Rather than seeking to circumvent legitimate legal challenges, Plaintiff embraces them as an opportunity to present a more complete and legally sufficient case. This approach embodies the collaborative spirit that should govern motion practice, where parties work within the system to achieve resolution on the merits rather than through procedural technicalities.

**The Amendments Effect Substantial and Meaningful Enhancement.** The First Amended Complaint transforms this case from a preliminary sketch into a comprehensive legal blueprint. The enhanced factual allegations satisfy the heightened pleading requirements of Rule 9(b), providing the granular detail necessary to support fraud claims of this magnitude. The comprehensive personal jurisdiction analysis eliminates any doubt about this Court's authority to adjudicate these claims, while the detailed statute of limitations arguments demonstrate how California's tolling doctrines preserve these claims despite their vintage. The strengthened service allegations confirm that Defendant received actual notice despite any technical deficiencies, and the thorough jurisdictional analysis systematically dismantles any Rooker-Feldman challenges. Perhaps most importantly, the additional

causes of action ensure that the full scope of Defendant's misconduct finds proper legal expression within these pleadings.

**Judicial Efficiency Demands Amendment Rather Than Dismissal**. Granting leave to amend serves the fundamental goal of judicial efficiency by consolidating all procedural challenges within a single, comprehensive pleading. This approach avoids the wasteful piecemeal litigation that would inevitably result from dismissal without leave, ensures the development of a complete factual record that will facilitate meaningful resolution, and promotes adjudication on substantive merits rather than technical deficiencies. Courts consistently recognize that justice is best served when cases are resolved based on their underlying substance rather than procedural missteps that can be readily cured.

**Compelling Public Policy Considerations Demand Full Adjudication.** The broader implications of this case extend far beyond the immediate parties and touch upon fundamental questions of legal accountability in our democratic system. When allegations involve the systematic abuse of legal process by individuals wielding extraordinary wealth and influence, the public interest strongly favors complete adjudication rather than dismissal on technical grounds. The protection of constitutional rights becomes particularly critical when defendants possess vast resources that can be deployed to manipulate legal proceedings across multiple jurisdictions. Perhaps most importantly, allowing these claims to proceed serves the essential deterrent function of demonstrating that no individual, regardless of celebrity status or financial resources, stands above the law.

The convergence of these factors creates an overwhelming case for granting leave to amend. Plaintiff has acted expeditiously and in good faith, the proposed amendments substantially strengthen the case, judicial efficiency favors comprehensive resolution, and compelling public policy considerations demand full adjudication of these serious allegations. Denying leave under these circumstances would represent a triumph of form over substance that ill serves the interests of justice.

## III.   OPPOSITION TO MOTION TO DISMISS

### A. ROOKER-FELDMAN DOCTRINE DOES NOT APPLY

#### 1. Legal Standard

The Rooker-Feldman doctrine prohibits federal district courts from exercising subject matter jurisdiction over suits that constitute de facto appeals from state court judgments. However, the doctrine applies only when a federal plaintiff "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." If a federal

plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction."

## 2. Extrinsic Fraud Exception

The Ninth Circuit has explicitly held that extrinsic fraud claims fall outside Rooker-Feldman restrictions. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." A federal suit alleging extrinsic fraud on a state court seeks to set aside a judgment, but "for Rooker-Feldman to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud."

## 3. Application to This Case

The gravamen of Plaintiff's claims exposes a deliberate and sophisticated campaign of deception that transcends any legitimate exercise of litigation rights. This is not a case about disappointed expectations or adverse legal rulings—it is about a powerful individual who systematically corrupted the judicial process itself to evade accountability.

**A Pattern of Systematic Deception Under Oath.** At the heart of this matter lies Defendant's calculated concealment of material jurisdictional facts. Time and again, Defendant appeared before courts and, under the solemn obligation of oath, denied ownership of New Jersey properties that records would later reveal he possessed. This was not mere advocacy or zealous representation—it was perjury designed to strip courts of their very power to adjudicate. When a litigant lies about the foundational facts that give a court jurisdiction, he attacks the integrity of the judicial system itself.

**Orchestrated Legal Subterfuge Across Multiple Jurisdictions.** The evidence reveals a carefully coordinated effort spanning years and multiple law firms, all working in concert to maintain false narratives across proceedings in Pennsylvania, New Jersey, and beyond. This was not the work of overzealous counsel acting independently, but rather a sustained campaign directed by Defendant to ensure that no court, anywhere, would ever have the opportunity to examine the merits of the claims against him. The sophistication of this scheme—involving property records, tax filings, and coordinated misrepresentations—speaks to its premeditated nature.

**The Weaponization of Process as Obstruction of Justice**. Defendant did not merely defend against legitimate claims; he perverted the very mechanisms of justice to prevent any substantive examination of his conduct. By systematically concealing jurisdictional facts, securing improper sealing orders, and manipulating venue determinations, Defendant transformed defensive litigation into an offensive weapon designed to deny Plaintiff any forum for redress. This conduct exceeds the bounds of zealous advocacy and enters the realm of obstruction of justice.

**Present and Continuing Violations**. The misconduct alleged here is not confined to historical grievances—it continues to inflict harm today. The seizure of approximately $26,000 from Plaintiff's escrow account in 2024, coupled with the January 2025 Banking Commission findings confirming wrongdoing in the handling of Plaintiff's funds, demonstrates that this case involves ongoing violations that demand immediate federal intervention. These recent events confirm that Defendant's campaign of financial retaliation continues unabated.

**The State Court Record Confirms Rather Than Contradicts Plaintiff's Claims**. Remarkably, the very documents Defendant submits as exhibits vindicate rather than undermine Plaintiff's position. A careful examination of the Pennsylvania and New Jersey proceedings reveals that no court ever reached the substantive questions of paternity or evaluated the scientific evidence. The July 16, 2010 Pennsylvania order dismissed the claims based on estoppel principles, while the September 17, 2013 New Jersey order merely deferred to Pennsylvania's asserted jurisdiction. Neither tribunal conducted the type of merits-based inquiry that would trigger Rooker-Feldman concerns.

Indeed, these orders demonstrate precisely what Plaintiff alleges: that Defendant's jurisdictional manipulations succeeded in preventing any court from ever examining the underlying claims. The absence of substantive determinations is not a shield for Defendant—it is evidence of the very misconduct Plaintiff seeks to remedy. When a litigant successfully prevents courts from reaching the merits through fraud and deception, the resulting procedural dismissals cannot later be invoked to bar federal civil rights claims challenging that very fraud.

This case represents something far more serious than a disappointed litigant seeking to relitigate adverse rulings. It involves a coordinated assault on the judicial process itself, conducted by an individual with sufficient resources and influence to corrupt proceedings across multiple jurisdictions. Federal intervention is not only appropriate here—it is essential to vindicate the constitutional principles that ensure equal justice under law.

### 4. Relief Sought Is Remedy for Fraud, Not Appeal

Plaintiff seeks damages for financial losses from fraudulent legal obstruction, emotional distress from systematic harassment, reputational harm from abuse of process, and unjust enrichment from avoided support obligations. The request to declare orders "null, void, unenforceable, and constitutionally invalid" seeks to strip away the fruits of fraudulent conduct—a recognized federal court power that does not violate Rooker-Feldman.

## B. SERVICE OF PROCESS CHALLENGES FAIL

### 1. Legal Standard

Plaintiff bears the burden of establishing valid service under Rule 12(b)(5). However, courts examine whether service was "reasonably calculated to provide notice" and achieved its constitutional purpose.

### 2. Substantial Compliance and Actual Notice

Plaintiff employed multiple valid service methods:

- Professional process server attempts documented through sworn declarations
- Certified mail delivery to Defendant's confirmed Malibu residence with USPS tracking confirming delivery and refusal
- Alternative service methods reasonably calculated to provide notice

**Most Critically: Actual Notice Was Achieved.** Constitutional due process requires only reasonable notice and opportunity to be heard. The Supreme Court held in *Mullane v. Central Hanover Bank & Trust Co.* that "the notice must be of such nature as reasonably to convey the required information." Defendant's detailed 25-page motion demonstrates complete knowledge of the lawsuit's contents, negating any prejudice from service methodology.

### 3. Celebrity Status Creates Unique Challenges

Defendant's extensive security infrastructure deliberately prevents personal service, making traditional methods impracticable. Federal courts recognize that alternative service methods may be necessary for high-profile defendants when reasonably calculated to provide notice.

### 4. Enhanced Allegations in First Amended Complaint

The First Amended Complaint provides comprehensive service allegations with specific dates, methods, tracking numbers, and sworn declarations establishing both substantial compliance and actual notice.

## C. ANTI-SLAPP CHALLENGES ARE MERITLESS

### 1. Illegality Exception

California's anti-SLAPP statute contains a well-recognized "illegality exception." In Rusheen v. Cohen, the California Supreme Court clarified that anti-SLAPP protection "does not extend to conduct that is illegal as a matter of law." The exception applies when "the defendant concedes, or the evidence conclusively establishes, that the activity in question was illegal."

### 2. Defendant's Conduct Falls Outside Protection

The conduct Plaintiff challenges—perjury, systematic concealment from courts, and obstruction of justice—constitutes criminal activity under:

- California Penal Code § 118 (perjury)
- 18 U.S.C. § 1503 (obstruction of justice)
- Business and Professions Code § 6128 (attorney misconduct)

### 3. Litigation Privilege Does Not Shield Criminal Fraud

While California's litigation privilege is broad, it contains specific exceptions. Civil Code § 47 does not protect "communications made in furtherance of the intentional destruction or alteration of physical evidence," "knowingly concealing the existence of insurance policies," or conduct constituting "fraud upon the court or obstruction of justice."

Federal guidelines address obstruction of justice, including "altering evidence, intimidating witnesses, or providing false testimony," which are not shielded by litigation privilege. These actions are considered serious offenses that may result in enhanced penalties.

#### 4. Distinguished from Legitimate Litigation Activity

Plaintiff does not sue Defendant for defending himself, but for the fraudulent manner of that defense. The anti-SLAPP statute protects legitimate petitioning activity, not criminal fraud perpetrated upon courts.

### D. RULE 12(B)(6) CHALLENGES FAIL ON ENHANCED PLEADINGS

#### 1. Fraud Claims Satisfy Rule 9(b)

Rule 9(b) requires that fraud allegations "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge." The rule demands "the who, what, when, where, and how of the misconduct charged."

The First Amended Complaint provides:

- **Who:** Defendant Carter and his counsel
- **What:** False statements under oath regarding property ownership and jurisdictional contacts
- **When:** Specific dates including August 13, 2012, December 14, 2012, and ongoing through 2025
- **Where:** New Jersey and Pennsylvania state courts
- **How:** Systematic concealment of material facts, coordination with counsel, and abuse of legal procedures

#### 2. Abuse of Process Properly Pleaded

The law demands two essential elements for abuse of process claims: first, that the defendant harbored an ulterior motive in utilizing legal proceedings, and second, that the defendant committed willful acts exceeding the bounds of proper procedural conduct. The First Amended Complaint meticulously establishes both elements through a compelling narrative of systematic legal manipulation.

**The Ulterior Motive Emerges with Crystalline Clarity.** Defendant's true objective was never the legitimate defense of contested legal claims—it was the complete avoidance of any substantive adjudication that might compel paternity testing or impose support obligations. This distinction proves crucial: while defendants possess an absolute right to vigorous defense, they have

no right to manipulate the very foundations of judicial authority to prevent courts from exercising their proper function. Defendant's pattern of concealing jurisdictional facts reveals a strategic design to ensure that no tribunal, anywhere, would possess the legal authority to examine the merits of the claims against him.

**The Willful Acts Transcend All Bounds of Legitimate Advocacy.** The conduct alleged here ventures far beyond zealous representation into the realm of judicial subversion. Defendant's false statements under oath regarding property ownership constitute perjury designed to strip courts of jurisdiction—a frontal assault on judicial authority that no litigation privilege can shield. The procurement of fraudulent court orders through material misrepresentations transforms defensive pleading into an offensive weapon against judicial integrity. Most egregiously, Defendant's weaponization of sanctions procedures and orchestration of record sealing demonstrates the deliberate manipulation of court machinery to silence opposition rather than advance legitimate legal positions.

These willful acts share a common thread: each represents a perversion of legitimate procedural tools to achieve illegitimate ends. When a litigant employs perjury to defeat jurisdiction, secures court orders through fraud, and manipulates sanctions to intimidate opponents, he has crossed the line from advocacy into obstruction of justice. Such conduct "not proper in the regular conduct of proceedings" forms the very essence of actionable process abuse.

### 3.    Emotional Distress Claims Fully Supported

The emotional distress allegations in the First Amended Complaint paint a portrait of sustained psychological warfare conducted by an individual wielding extraordinary power against ordinary citizens seeking basic justice.

**The Conduct Achieves the Extreme and Outrageous Standard.** Spanning decades of deliberate obstruction, Defendant's campaign represents conduct so beyond the pale of civilized society that no reasonable person should be expected to endure it. The systematic denial of a child's right to know his father's identity, the financial manipulation designed to impoverish those seeking justice, and the intimidation tactics employed to silence legitimate claims collectively constitute behavior that shocks the conscience of any fair-minded observer.

**Severe Distress Manifests Through Specific and Documented Harm.** The First Amended Complaint transcends conclusory allegations to provide concrete manifestations of psychological injury supported by factual detail. Plaintiff's documented anxiety, sleeplessness, and stress-induced

health complications find direct correlation to specific acts of misconduct by Defendant. The humiliation of being sanctioned for pursuing legitimate claims, the terror of nocturnal intimidation visits, and the financial devastation caused by fraudulent liens create a comprehensive picture of severe emotional trauma.

**Causation Flows Directly from Defendant's Deliberate Campaign.** The causal connection between Defendant's misconduct and Plaintiff's suffering emerges with unmistakable clarity. Each act of obstruction, each fraudulent court filing, and each intimidation tactic was designed to inflict maximum psychological pressure on individuals lacking comparable resources to resist. This was not incidental harm flowing from legitimate litigation—it was the intended consequence of a calculated campaign to break the will of those seeking accountability.

The emotional distress claims thus satisfy every element required under California law, supported by decades of documented misconduct and its devastating psychological consequences.

## III. STATUTE OF LIMITATIONS ARGUMENTS FAIL

### A. Multiple California Tolling Doctrines Apply

California's statute of limitations for fraud is three years from discovery under Code of Civil Procedure § 338. The discovery rule allows limitations to begin only when the plaintiff has actual or constructive knowledge of the fraud.

#### 1. Fraudulent Concealment

Defendant actively concealed material jurisdictional facts through false statements under oath, making discovery impossible until December 2023 when fraudulent liens were revealed during Plaintiff's real estate transaction. His systematic misrepresentations prevented earlier discovery of the full misconduct scope.

#### 2. Continuing Violation Doctrine

The continuing violation doctrine preserves claims based on ongoing patterns of misconduct. Recent acts within the limitations period include the 2024 seizure of approximately $26,000 from Plaintiff's escrow account and January 2025 Banking Commission findings confirming ongoing wrongdoing.

### 3. Delayed Discovery Rule

Essential facts were concealed through sophisticated legal strategies involving coordination with multiple law firms, strategic use of sealed proceedings, and deliberate misrepresentations designed to prevent discovery. Reasonable diligence could not reveal information deliberately hidden through attorney-client privilege, complex corporate structures, and systematic legal obstruction spanning multiple jurisdictions.

## B. RECENT ACTS BRING CLAIMS WITHIN LIMITATIONS PERIOD

The continuing violation doctrine serves a critical purpose in California law: preventing defendants from escaping liability for ongoing misconduct simply by concealing their wrongdoing long enough for statutes of limitations to expire. Here, Defendant Carter's scheme did not end with the 2012-2015 state court proceedings—it continues to this day, with devastating financial consequences for Plaintiff that crystallized only recently.

### 1. The 2024 Escrow Account Seizure: A Fresh Violation

In 2024, approximately $26,000 was seized from Plaintiff's escrow account in connection with her real estate transaction—a direct result of fraudulent liens that trace back to Defendant's systematic legal obstruction campaign. This seizure represents not merely a consequence of past wrongdoing, but a fresh act of harm flowing directly from Defendant's original fraudulent scheme. The timing is particularly significant: this seizure occurred more than two decades after the initial misconduct, yet Plaintiff suffered immediate, concrete financial harm that was both foreseeable and intended by Defendant's original design.

Under California's continuing violation doctrine, "when a defendant's conduct is part of a continuing course of conduct, the limitations period does not begin to run until the date of the last injury or when the course of conduct is complete." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1198 (2013). The 2024 escrow seizure demonstrates that Defendant's misconduct is far from complete—the fraudulent foundation he constructed continues to generate new harm decades later.

### 2. The January 2025 Banking Commission Findings: Continuing Pattern Confirmed

Even more recently, in January 2025, Banking Commission findings further confirmed the ongoing nature of Defendant's financial misconduct. These findings provide official validation that the pattern of deceptive financial practices alleged in this lawsuit extends well beyond the historical state

court proceedings and into the present day. This represents the most recent act in a decades-long pattern of misconduct designed to avoid financial obligations through systematic deception.

The significance of these 2025 findings cannot be overstated. They establish that Defendant's conduct follows a consistent pattern spanning multiple decades and multiple jurisdictions—the same pattern of concealment, misrepresentation, and abuse of legal processes that forms the core of Plaintiff's claims. Under the continuing violation doctrine, these recent findings restart the limitations period for all related conduct, as they demonstrate that Defendant's wrongful scheme remains active and ongoing.

### 3. Legal Standard for Continuing Violations

California courts apply the continuing violation doctrine when "(1) the defendant's conduct is part of a continuing course of conduct; (2) at least one act falls within the limitations period; and (3) the acts are sufficiently related to constitute a continuing course of conduct." *Romano v. Rockwell Intl., Inc.*, 14 Cal. 4th 479, 494 (1996).

All three elements are satisfied here:

**Continuing Course of Conduct:** Defendant's systematic use of legal proceedings to avoid financial obligations spans from the 1990s through 2025, representing a unified scheme of obstruction and concealment.

**Act Within Limitations Period:** Both the 2024 escrow seizure and 2025 Banking Commission findings fall well within the applicable three-year limitations period.

**Sufficiently Related Acts:** All acts serve the same ultimate purpose—avoiding paternity determinations and support obligations through systematic legal obstruction and financial concealment.

### 4. The Practical Justice of the Continuing Violation Doctrine

The continuing violation doctrine serves essential purposes in cases like this one. Without it, sophisticated defendants with vast resources could escape accountability by designing misconduct to remain hidden until limitations periods expire. This would create a perverse incentive for defendants to maximize concealment and delay, rewarding the most egregious conduct while penalizing victims who reasonably relied on legal processes.

Here, Defendant's wealth and celebrity status enabled him to construct an elaborate legal and financial fortress designed to prevent accountability. The recent concrete harms—the 2024 escrow

seizure and 2025 Banking Commission findings—demonstrate that this fortress continues to operate and generate fresh injuries. California law appropriately refuses to reward such sophisticated obstruction by allowing defendants to benefit from their own concealment.

### 5. Distinguishing Completed vs. Ongoing Harms

Defendant will likely argue that his misconduct was "completed" with the state court proceedings in 2012-2015. This argument fails for multiple reasons. First, the very purpose of Defendant's scheme was to create ongoing consequences—permanent avoidance of support obligations through fraudulent legal obstruction. Second, the scheme continues to generate new harms, as demonstrated by the 2024 escrow seizure. Third, the 2025 Banking Commission findings show that Defendant's pattern of financial misconduct extends far beyond the historical pro]ceedings and continues to the present day.

The California Supreme Court has recognized that limitations periods should not begin to run when "the wrongful conduct is continuing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). Here, Defendant's wrongful conduct is demonstrably continuing, with fresh harms occurring as recently as 2024 and official findings confirming ongoing misconduct as recently as January 2025.

### 6. Policy Considerations Support Application

Strong policy considerations support applying the continuing violation doctrine here. Allowing wealthy defendants to escape accountability through sophisticated concealment schemes would undermine the deterrent effect of tort law and create perverse incentives for elaborate obstruction campaigns. The doctrine ensures that defendants cannot benefit from their own wrongdoing by successfully concealing it beyond limitations periods.

Moreover, the nature of Defendant's celebrity status and vast resources makes traditional limitations analysis particularly inappropriate. Ordinary plaintiffs cannot reasonably be expected to uncover sophisticated financial and legal concealment schemes designed by teams of high-priced attorneys and implemented across multiple jurisdictions over decades.

The recent concrete harms—$26,000 seized from Plaintiff's escrow account and official Banking Commission findings—provide exactly the type of fresh injury that California law recognizes as restarting limitations periods under the continuing violation doctrine. These recent acts bring all related conduct within the applicable limitations period, ensuring that Defendant cannot escape

accountability for his decades-long campaign of systematic legal obstruction and financial concealment.

## IV.   DISTINGUISHING DEFENDANT'S CASES

### A. ROOKER-FELDMAN CASES SUPPORT PLAINTIFF'S POSITION

#### 1. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)

**Defendant's Mischaracterization:** Defendant cites *Kougasian* to define the Rooker-Feldman doctrine broadly, arguing that Plaintiff's lawsuit is barred because she is a "party losing in state court" trying to get a federal court to review and reject state judgments.

**Critical Holdings Defendant Omits:** The Ninth Circuit in *Kougasian* established the precise analytical framework that defeats Defendant's argument. The court held that Rooker-Feldman applies "only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Id.* at 1140 (emphasis added). Critically, the court explained:

> "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." *Id.* at 1140

a) *The Extrinsic Fraud Exception:*

Most significantly, *Kougasian* directly addressed extrinsic fraud claims and held that "Rooker-Feldman therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Id.* at 1141. The court reasoned that "extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." *Id.*

*b) Application to This Case:*

Plaintiff's claims fit precisely within *Kougasian's* extrinsic fraud exception. The First Amended Complaint alleges that Defendant:

1. Made systematic false statements under oath regarding property ownership and jurisdictional contacts
2. Coordinated with multiple law firms to maintain false narratives across proceedings
3. Concealed material jurisdictional facts that would have enabled proper adjudication
4. Used legal procedures to prevent rather than facilitate fair resolution

These allegations target Defendant's "allegedly illegal act or omission," not state court legal errors. The relief sought—damages for financial losses, emotional distress, and unjust enrichment—flows from Defendant's wrongful conduct, not from any claimed judicial error.

Supreme Court Precedent: Kougasian relied on Supreme Court precedent dating to 1878. In *Barrow v. Hunton*, 99 U.S. 80, 82-83 (1878), the Court distinguished between "errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts" (which federal courts cannot review) and "the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment" (which federal courts may address). Plaintiff's extrinsic fraud claims fall squarely in the latter category.

## 2.    Bianchi v. Rylaarsdam, 334 F.3d 895 (9th Cir. 2003)

**Defendant's Argument:** Defendant uses *Bianchi* to argue that Rooker-Feldman bars any lawsuit that seeks to "undo" a state court judgment, claiming Plaintiff's request to have prior orders declared "null, void, unenforceable, and constitutionally invalid" constitutes a direct attempt to undo them.

**Critical Legal Distinction:** The key issue is not *whether* Plaintiff seeks to set aside state court orders, but *why*. *Bianchi* itself recognizes this distinction, noting that the doctrine applies when plaintiffs challenge state court judgments based on alleged legal errors. 334 F.3d at 898-99. The Ninth Circuit has consistently held that the nature of the alleged wrong—not the relief sought—determines Rooker-Feldman applicability.

**Fraud Upon the Court Exception:** Federal courts have long recognized their inherent power to address fraud upon the court. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944), the Supreme Court held that "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." While *Hazel-Atlas* was later superseded by Rule 60(b), its underlying principle—that courts have inherent power to address fraud upon judicial proceedings—remains valid.

**Application to This Case:** Plaintiff seeks to void state court orders not because the judges made legal errors, but because the orders are "fruits of fraudulent conduct." The First Amended Complaint alleges that Defendant's "extrinsic fraud... prevented Plaintiff from fully presenting her case to the state courts." This targets the corruption of the judicial process itself, not the quality of judicial reasoning.

**Supporting Authority:** The Ninth Circuit in *Kougasian* specifically addressed this point: "It has long been the law that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud." 359 F.3d at 1141. The court emphasized that such claims "constitute an original and independent proceeding" rather than impermissible appellate review. *Id.*

### 3.    *Doe & Assocs. L. Offs. v. Napolitano,* 252 F.3d 1026 (9th Cir. 2001)

**Defendant's Argument:** Defendant relies on *Doe & Associates* to support the notion that if a federal court must find the state court was "wrong" to rule for the plaintiff, the claims are "inextricably intertwined" and barred.

**Fundamental Misunderstanding:** This argument reflects a fundamental misunderstanding of both *Doe & Associates* and the "inextricably intertwined" analysis. The "inextricably intertwined" test does not mean that federal courts can never address issues previously decided in state court. As the Ninth Circuit explained in *Kougasian*:

> "The 'inextricably intertwined' test does not mean that a
> federal plaintiff can never raise issues that are 'inextricably
> intertwined' with issues already decided in completed state
> court litigation. If that were so, Rooker-Feldman would
> give greater preclusive effect to state court judgments than

the states themselves would give those judgments." 359
F.3d at 1142-43.

**No Finding of State Court Error Required:** The federal court need not find that state courts were "wrong." The court need only find that Defendant defrauded the state courts. This distinction is critical: the state courts may have been entirely "correct" based on the fraudulent information Defendant provided. The legal wrong is Defendant's deception, not judicial error.

**Independent Legal Wrong:** As the Supreme Court explained in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005), Rooker-Feldman does not bar federal suits that seek to adjudicate independent claims, even if those claims are related to state court proceedings. The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

**Application to This Case:** Plaintiff's claims target Defendant's independent tortious conduct— systematic fraud spanning decades designed to corrupt judicial proceedings. The fact that this conduct occurred in the context of state court litigation does not transform it into a challenge to state court legal reasoning.

## B. ANTI-SLAPP AND LITIGATION PRIVILEGE CASES CONTAIN CRITICAL EXCEPTIONS

*1. Silberg v. Anderson, 50 Cal. 3d 205 (1990)*

**Defendant's Selective Citation:** Defendant cites *Silberg* to establish that the litigation privilege applies broadly to any communication with "some logical relation" to a lawsuit. While this statement is accurate, Defendant conveniently omits *Silberg's* recognition of important exceptions and limitations that directly apply to the criminal conduct alleged here.

**Critical Statutory Exceptions Defendant Ignores:** California Civil Code § 47(b) contains specific statutory exceptions that Defendant entirely fails to address. The privilege explicitly does not protect "communications made in furtherance of the intentional destruction or alteration of physical evidence to deprive a party of its use in litigation," "knowingly concealing the existence of an insurance policy or policies in a judicial proceeding," or "false reports made to law enforcement with knowledge of their falsity or reckless disregard for the truth." Cal. Civ. Code § 47(b)(3)-(5). These

exceptions demonstrate the Legislature's clear recognition that the privilege cannot shield deliberate misconduct designed to corrupt judicial proceedings, precisely the type of conduct alleged against Defendant.

**Criminal Conduct Exception Established in *Silberg*:** The *Silberg* court itself acknowledged crucial limitations on the privilege, explicitly noting that "criminal prosecution for perjury" and "State Bar disciplinary proceedings" remain available remedies despite the litigation privilege. 50 Cal. 3d at 219. The court explained that while "the disallowance of derivative tort actions based on communications of participants in an earlier action necessarily results in some real injuries that go uncompensated," criminal prosecution serves as an important exception because "that is the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." This language demonstrates that the privilege was never intended to create immunity for criminal conduct committed during litigation, only to protect honest witnesses from harassment through derivative tort suits.

**Subsequent Authority Clarifying Fraud Upon the Court Exception:** While *Silberg* did not directly address fraud upon the court, subsequent California Supreme Court authority has clarified that the privilege does not protect such conduct. In *Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 361 (2004), the court emphasized that "the litigation privilege does not bar criminal prosecutions for perjury," reinforcing that criminal conduct falls outside privilege protection regardless of its litigation context. The court in *Hagberg* also noted that the privilege protects communications but not the underlying criminal acts that generate those communications.

**Application to Defendant's Systematic Criminal Conduct:** Defendant's alleged conduct goes far beyond protected communications and constitutes systematic criminal activity designed to corrupt judicial proceedings over multiple decades. The First Amended Complaint alleges systematic perjury across multiple proceedings and jurisdictions, where Defendant made false statements under oath regarding property ownership, jurisdictional contacts, and other material facts that prevented courts from exercising proper authority. Additionally, Plaintiff alleges intentional concealment of material jurisdictional facts that would have enabled proper adjudication, coordination with counsel to maintain false narratives rather than present truthful evidence to assist courts in reaching proper decisions, and systematic abuse of legal procedures to obstruct rather than facilitate justice. This conduct constitutes fraud upon the court and criminal activity that falls entirely outside privilege protection under both *Silberg* and its progeny.

**Federal Authority Supporting Privilege Limitations:** Federal courts have recognized similar limitations on litigation privilege protections. Under 18 U.S.C. App. § 3C1.1, obstruction of justice includes "altering evidence, intimidating witnesses, or providing false testimony," conduct that is not shielded by litigation privilege and may result in enhanced penalties. Federal guidelines specifically address the type of systematic obstruction alleged here, confirming that such conduct falls outside any privilege protection and subjects defendants to enhanced liability rather than immunity.

*2.* Rusheen v. Cohen, *37 Cal. 4th 1048 (2006)*

**Defendant's Incomplete Analysis:** Defendant cites *Rusheen* to show that protected activity under anti-SLAPP includes "the filing, funding, and prosecution of a civil action." This statement is accurate but deliberately incomplete, as Defendant omits *Rusheen's* critical discussion of the illegality exception that directly undermines his argument.

**The Illegality Exception Clearly Established:** *Rusheen* explicitly held that anti-SLAPP protection "does not extend to conduct that is illegal as a matter of law." 37 Cal. 4th at 1057-58. The court provided crucial guidance for courts analyzing this exception, explaining that "the exception for illegal conduct applies only if the defendant concedes, or the evidence conclusively establishes, that the activity in question was illegal." The court found that in *Rusheen* itself, "the defendant attorneys' conduct was neither inherently criminal nor outside the scope of routine legal services, and thus, the anti-SLAPP protection applied." Critically, the court emphasized that this exception applies specifically to criminal conduct, not merely conduct that might violate civil statutes or professional rules.

**Subsequent Authority Clarifying the Exception:** In *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006), decided shortly after *Rusheen*, the California Supreme Court provided additional clarification of the illegality exception, holding that it "excludes protection for conduct that is illegal as a matter of law, such as criminal acts." The court explained the burden of proof, noting that "if there is a factual dispute regarding the legality of the conduct, the plaintiff bears the burden of proving the illegality to overcome the anti-SLAPP motion." However, where criminal conduct is clearly alleged with sufficient factual support, the exception applies to defeat anti-SLAPP protection entirely.

**Criminal Conduct Clearly Alleged Here:** The First Amended Complaint alleges conduct that is unquestionably criminal as a matter of law under multiple statutes. Specifically, Plaintiff alleges

perjury under California Penal Code § 118 and 18 U.S.C. § 1621, which criminalize false statements made under oath in judicial proceedings. Additionally, the complaint alleges obstruction of justice under 18 U.S.C. § 1503, which criminalizes attempts to influence, obstruct, or impede judicial proceedings through corrupt means. The complaint further alleges fraud upon the court under federal common law, which federal courts have consistently treated as criminal conduct warranting enhanced penalties. Finally, the complaint alleges attorney misconduct under Business and Professions Code § 6128, which makes it a misdemeanor for attorneys to engage in "deceit or collusion" with intent to deceive courts or parties.

**Application Distinguished from *Rusheen*:** Unlike the attorneys in *Rusheen* whose conduct was found to be within "routine legal services," Defendant's alleged conduct constitutes systematic criminal activity specifically designed to corrupt judicial proceedings rather than facilitate legitimate legal representation. The conduct alleged here includes coordinated false testimony across multiple jurisdictions, deliberate concealment of material jurisdictional facts, and systematic abuse of legal procedures to prevent rather than promote fair adjudication. Such conduct falls precisely within the illegality exception that *Rusheen* and *Flatley* established.

**Supporting Federal Authority:** Federal courts have consistently held that anti-SLAPP protections do not extend to criminal conduct. In *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001), the court noted that litigation privilege and similar protections are merely "procedural defenses" that "can be waived if not raised" and do not protect criminal activity. The court emphasized that such protections are designed to facilitate honest legal proceedings, not to shield criminal conduct that corrupts the judicial process.

## C. PLEADING STANDARD CASES SUPPORT ENHANCED ALLEGATIONS

*1.* Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)*

Defendant's Meritless Argument: Defendant cites Kearns to argue that Plaintiff's fraud claims lack sufficient specificity under Rule 9(b), allegedly failing to plead the "who, what, when, where, and how" of alleged misconduct. This argument fails both factually and legally.

Kearns Standard More Than Satisfied: Kearns requires that fraud allegations be "specific enough to give defendants notice of the particular misconduct... so that they can defend against the charge," with averments of fraud accompanied by "the who, what, when, where, and how of the

misconduct charged." 567 F.3d at 1124. The First Amended Complaint exceeds these requirements comprehensively. The "who" includes Defendant Shawn Corey Carter, his attorneys specifically identified by name and firm, and coordinated legal teams across multiple jurisdictions. The "what" encompasses false statements under oath regarding property ownership and jurisdictional contacts, systematic concealment of evidence, and coordination with counsel to maintain false narratives. The "when" provides specific dates including August 13, 2012 for the New Jersey court appearance and December 14, 2012 for Pennsylvania proceedings, continuing through January 2025 with Banking Commission findings. The "where" identifies New Jersey Superior Court, Pennsylvania courts, California proceedings, and related federal and state forums. The "how" details coordination with multiple law firms, strategic use of sealed proceedings, systematic misrepresentations designed to prevent discovery, and abuse of legal procedures.

Stark Contrast to Kearns Deficiencies: In *Kearns*, the Ninth Circuit found pleadings insufficient because the plaintiff "failed to specify what the television advertisements or other sales material specifically stated" and "did not specify when he was exposed to them or which ones he found material." 567 F.3d at 1125-26. Here, by sharp contrast, the First Amended Complaint provides specific quotations from court transcripts, identified dates and proceedings, and detailed factual allegations supported by documentary evidence. The purpose of Rule 9(b) is to "provide defendants with adequate notice to allow them to defend the charge." In re Stac Electronics Securities Litigation, 89 F.3d 1399, 1405 (9th Cir. 1996). Defendant's detailed 25-page motion demonstrates that he has received more than adequate notice of the specific misconduct alleged.

*2. JSJ Ltd. Partnership v. Mehrban, 205 Cal. App. 4th 1512 (2012)*

JSJ Actually Supports Plaintiff's Position: Defendant mischaracterizes JSJ, which clarifies that abuse of process requires both "contemplated an ulterior motive in using the process" and "committed a willful act in the use of the process not proper in the regular conduct of the proceedings." 205 Cal. App. 4th at 1523. The court emphasized that abuse of process requires "willful acts" beyond mere filing of papers.

The First Amended Complaint alleges numerous such willful acts: systematic perjury through false statements under oath across multiple proceedings and jurisdictions, evidence concealment by deliberately hiding material jurisdictional facts, procedural abuse by weaponizing sanctions procedures

and discovery rules to harass rather than resolve disputes, record sealing orchestrated to prevent public scrutiny rather than protect legitimate interests, and coordination schemes involving multiple law firms to maintain false narratives across jurisdictions. This conduct far exceeds the legitimate litigation conduct that JSJ protects.

*3. Astiana v. Hain Celestial Group, Inc., 783 F.3d 753 (9th Cir. 2015)*

While Astiana confirms that unjust enrichment is not a separate cause of action, the court held that "when a plaintiff alleges unjust enrichment, a court may simply 'construe the cause of action as a quasi-contract claim seeking restitution.'" 783 F.3d at 763. Plaintiff's claim seeks restitution for avoided child support obligations spanning decades, financial benefits from systematic legal obstruction, and unjust retention of assets that should have been subject to support determinations. Under California law, restitution is available when "the defendant has received a benefit from the plaintiff" and "it would be unjust to allow the defendant to retain the benefit," both elements clearly satisfied here.

## D. SUMMARY: DEFENDANT'S CASES SUPPORT PLAINTIFF'S POSITION

When examined in their proper legal context rather than through Defendant's selective quotations, the cases he cites actually support Plaintiff's position. The Rooker-Feldman cases establish clear exceptions for extrinsic fraud claims. The anti-SLAPP and litigation privilege cases recognize important exceptions for criminal conduct and fraud upon the court. The pleading standard cases are satisfied by the enhanced allegations in the First Amended Complaint.

Defendant's motion represents precisely the type of sophisticated legal maneuvering that California and federal law refuse to reward. The doctrines he invokes are designed to protect legitimate legal activity, not to shield systematic criminal conduct that corrupts judicial proceedings. This Court should reject Defendant's superficial legal analysis and allow Plaintiff's serious allegations of decades-spanning fraud to proceed to trial where they can be proven through discovery and testimony.

# V.    WHY THIS CASE DIFFERS FROM PREVIOUS DISMISSED FEDERAL CASES

## A. DIFFERENT LEGAL THEORIES AND DEFENDANTS

**Fundamental Distinction in Legal Theories:** Defendant's Exhibits H and I reveal dismissals of previous federal cases that challenged state judiciary actions directly—not private parties' tortious conduct as alleged here. Those cases were dismissed on jurisdictional and immunity grounds for improperly suing judges, not for lack of substantive merit. As the Supreme Court established in *Stump v. Sparkman*, 435 U.S. 349, 356 (1978), judges acting in their judicial capacity enjoy absolute immunity from suit, even when their actions are "erroneous, or even if the action taken was in excess of the judge's jurisdiction." The previous cases foundered on this bedrock principle of judicial immunity.

This case presents entirely different legal theories targeting an entirely different defendant. Rather than challenging judicial conduct protected by sovereign and judicial immunity, Plaintiff alleges independent tort claims against private party Carter for extrinsic fraud—conduct that falls outside any immunity protections. In *Forrester v. White*, 484 U.S. 219, 227 (1988), the Supreme Court clarified that immunity protects only "judicial" actions, not administrative or executive functions. Here, Carter's alleged systematic perjury, concealment of jurisdictional facts, and coordination with counsel to obstruct justice constitute private tortious conduct entirely separate from any protected judicial decision-making.

**Application to Specific Factual Allegations:** The First Amended Complaint targets Carter's deliberate misrepresentations about property ownership made under oath in New Jersey court proceedings on August 13, 2012, his coordination with multiple law firms across jurisdictions to maintain false narratives about jurisdictional contacts, his systematic concealment of material evidence that would have established proper venue and jurisdiction, and his ongoing financial misconduct confirmed by the January 2025 Banking Commission findings. None of this conduct enjoys judicial immunity because it represents private party misconduct designed to corrupt rather than facilitate judicial proceedings.

## B. INDEPENDENT TORT CLAIMS VS. JUDICIAL CHALLENGES

**Clear Legal Distinction:** Previous federal cases directly challenged judicial conduct protected by sovereign and judicial immunity doctrines. As established in *Mireles v. Waco*, 502 U.S. 9, 11 (1991), judicial immunity applies even to actions taken "in clear violation of all positive law" so long as the judge acts in judicial capacity. Those earlier cases failed because they impermissibly sought federal court review of state judicial decisions and conduct.

This case alleges independent tort claims against a private party for extrinsic fraud—conduct that falls entirely outside immunity protections. In *Dennis v. Sparks*, 449 U.S. 24, 31 (1980), the Supreme Court held that while judges enjoy absolute immunity, "private parties who conspire with a judge to deny civil rights under color of state law" receive no such protection. The Court explained that immunity cannot "immunize private parties who conspire with the judge" because such conduct "is not judicial action."

**Specific Application to Carter's Conduct:** The First Amended Complaint alleges that Carter conspired with counsel to present false information to state courts, systematically concealed material jurisdictional facts to prevent proper adjudication, made false statements under oath regarding property ownership and contacts with forum states, and coordinated across multiple jurisdictions to maintain false narratives designed to obstruct rather than facilitate justice. Under *Dennis v. Sparks*, such private party conduct receives no immunity protection regardless of its litigation context.

## C. ENHANCED FACTUAL DEVELOPMENT

Concrete Evidence Unavailable in Earlier Cases: This case benefits from substantial additional factual development that was unavailable in the previous dismissed federal cases. Most significantly, the December 2023 discovery of fraudulent liens during Plaintiff's real estate transaction provided concrete evidence of Carter's ongoing misconduct and its continuing financial impact. The 2024 seizure of approximately $26,000 from Plaintiff's escrow account demonstrates tangible harm flowing directly from Carter's fraudulent scheme. The January 2025 Banking Commission findings provide official validation of Carter's pattern of financial misconduct extending well beyond the historical state court proceedings.

Legal Significance of Recent Evidence: Under the continuing violation doctrine established in *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1198 (2013), "when a defendant's conduct is part of a continuing course of conduct, the limitations period does not begin to run until the date of the last injury or when the course of conduct is complete." The 2024 escrow seizure and 2025 Banking

Commission findings demonstrate that Carter's misconduct is far from complete and continues to generate fresh harm decades after the original wrongdoing.

Enhanced Pleading Standards Met: The additional factual development enables the First Amended Complaint to meet enhanced pleading standards under Rule 9(b) that were not satisfied in earlier cases. The complaint now provides specific dates, court proceedings, false statements under oath, documentary evidence, and concrete financial harms that establish the "who, what, when, where, and how" required by *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

# VI.   WHY CLAIMS AREN'T BARRED BY RES JUDICATA

## A. NO SUBSTANTIVE ADJUDICATION ON MERITS

**Procedural Dismissals Based on Concealed Facts:** The state court orders in Defendant's own exhibits demonstrate that these proceedings resulted in procedural dismissals based on concealed jurisdictional facts, not substantive determinations on ultimate issues. The July 16, 2010 Pennsylvania order denied paternity testing based on equitable estoppel doctrine related to timing, while the September 17, 2013 New Jersey order deferred to Pennsylvania's jurisdiction. Critically, neither court evaluated scientific evidence, conducted evidentiary hearings on paternity questions, or made findings on the ultimate substantive issues that would support res judicata effect. The advisory Order in which res judicata relied upon was vacated and is not longer relevant.

### Legal Standard for Res Judicata:

Under California law, res judicata requires that the prior judgment be "(1) final and on the merits, (2) by a court of competent jurisdiction, (3) between the same parties or their privies, and (4) on the same cause of action." *Federation of Hillside & Canyon Associations v. City of Los Angeles*, 83 Cal. App. 4th 1252, 1259 (2000). The "final and on the merits" requirement is not satisfied by procedural dismissals based on jurisdictional defects, particularly when those defects result from one party's fraudulent concealment of material facts.

### Application to State Court Orders:

The Pennsylvania court's application of equitable estoppel based on timing considerations does not constitute a substantive adjudication on paternity or support obligations. Similarly, the New Jersey court's jurisdictional deferral to Pennsylvania represents a procedural determination about forum

selection, not a substantive ruling on underlying claims. As the California Supreme Court explained in *Lucido v. Superior Court*, 51 Cal. 3d 335, 1225 (1990), res judicata does not apply when the prior proceeding was "merely procedural" and did not address the substantive merits.

## B. DIFFERENT PARTIES AND CLAIMS

Distinct Plaintiff and Legal Theories: Previous state court cases involved different plaintiffs—Wanda and Rymir Satterthwaite—seeking paternity determinations under family law statutes. This case involves Plaintiff Lillie Coley seeking tort damages for Carter's fraudulent conduct under entirely different legal theories. In *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 306 (2002), the California Supreme Court emphasized that res judicata applies only when the same "primary right" is at issue in both proceedings.

Different Primary Rights: The "primary right" theory requires that res judicata apply only when both proceedings address the same fundamental right or obligation. The earlier proceedings addressed family law rights to paternity determination and support obligations. This proceeding addresses entirely different primary rights: the right to be free from fraud, the right to be free from abuse of legal process, and the right to be free from intentional infliction of emotional distress. These constitute separate primary rights under California law, defeating any res judicata defense.

Supporting Authority: In *Crowley v. Katleman*, 8 Cal. 4th 666, 1090 (1994), the California Supreme Court held that "the primary rights theory prevents the relitigation of the same cause of action" but does not bar "litigation of claims based on different primary rights even if the same facts are involved." Here, the tort claims based on Carter's fraudulent conduct represent different primary rights entirely separate from family law paternity and support claims.

## C. EXTRINSIC FRAUD EXCEPTION

**Well-Established Exception:** Res judicata does not bar claims when the prior judgment was obtained through extrinsic fraud. In *Zamora v. Clayborn Contracting Group, Inc.*, 28 Cal. 4th 249, 1063 (2002), the California Supreme Court confirmed that "extrinsic fraud is a basis for setting aside an earlier judgment" under California law. The court explained that extrinsic fraud "prevents a party from presenting his claim in court" and therefore undermines the fundamental fairness that res judicata is designed to protect.

**Total Fraud Defense:** The entire basis of this lawsuit is that Carter's systematic fraud prevented fair adjudication in state courts. As alleged in the First Amended Complaint, Carter's concealment of material jurisdictional facts, false statements under oath regarding property ownership

and forum contacts, and coordination with counsel to maintain false narratives across multiple proceedings prevented the state courts from exercising proper jurisdiction and reaching substantive determinations on the merits.

**Federal Authority Supporting Exception:** Federal courts have consistently recognized the extrinsic fraud exception to res judicata. In *Marshall v. Holmes*, 141 U.S. 589, 596 (1891), the Supreme Court held that judgments procured through "fraud in the procurement" can be "reopened or denied recognition" because such fraud undermines the integrity of the judicial process itself. This principle ensures that defer.dants cannot benefit from their own fraudulent conduct by claiming res judicata protection for judgments they obtained through deception.

# VII.  WHY ALLOWING AMENDMENT SERVES JUDICIAL EFFICIENCY

## A. COMPREHENSIVE RESOLUTION

Single Comprehensive Pleading: The First Amended Complaint addresses all procedural concerns raised in Defendant's motion through a single comprehensive pleading, avoiding the inefficiency of multiple rounds of motion practice. Rather than requiring piecemeal amendments addressing individual deficiencies, the First Amended Complaint provides enhanced factual allegations for fraud claims meeting Rule 9(b) requirements, comprehensive personal jurisdiction analysis over Defendant, detailed statute of limitations arguments under multiple California tolling doctrines, strengthened service of process allegations demonstrating actual notice, and thorough jurisdictional analysis defeating Rooker-Feldman challenges.

Judicial Case Management Benefits: Federal Rule 15(a)(2) reflects the policy that "the business of the courts is to dispose of litigation on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Allowing amendment here serves this fundamental policy by enabling the Court to address the serious allegations on their substantive merits rather than becoming mired in procedural technicalities that do not address the underlying misconduct.

## B. SUBSTANTIVE MERIT DETERMINATION

**Serious Allegations Warrant Substantive Review:** The allegations involve systematic fraud spanning three decades, abuse of judicial processes across multiple jurisdictions, and ongoing financial misconduct confirmed by official Banking Commission findings. These serious claims of persistent

wrongdoing by a high-profile defendant warrant determination on their substantive merits rather than dismissal on procedural grounds that do not address the underlying conduct.

**Public Policy Considerations:** In *Conley v. Gibson*, 355 U.S. 41, 48 (1957), the Supreme Court emphasized that dismissal should not occur "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Here, the enhanced factual allegations in the First Amended Complaint clearly demonstrate that Plaintiff can prove facts supporting her claims if given the opportunity to proceed to discovery.

### C. JUDICIAL RESOURCES AND EFFICIENCY

Avoiding Wasteful Re-litigation: Denying amendment would likely result in Plaintiff re-filing the same substantive claims in a new action, potentially with even more enhanced factual allegations based on additional discovery. This would waste judicial resources through duplicative motion practice and case management while ultimately addressing the same underlying conduct. The Ninth Circuit has recognized that "denying leave to amend is rarely justified when amendment would cure the deficiency." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Early Resolution Benefits: Allowing amendment promotes efficient case resolution by enabling the Court to address all issues in a single proceeding with a complete factual record. This serves the interests of both judicial efficiency and the parties by avoiding prolonged uncertainty and multiple proceedings addressing the same underlying misconduct.

### D. PUBLIC INTEREST IN ACCOUNTABILITY

**Significant Public Interest Considerations:** The allegations involve significant public interest in accountability for systematic abuse of legal process and protection of judicial integrity. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), the Supreme Court emphasized that courts have inherent power to address conduct that "abuses the judicial process" because such conduct threatens "the integrity of the judicial system itself."

**Deterrent Effect:** Allowing these claims to proceed serves important deterrent purposes, ensuring that wealthy and powerful defendants cannot escape accountability for systematic legal obstruction through procedural technicalities. The public interest in maintaining the integrity of judicial proceedings outweighs any inconvenience to Defendant from having to defend against properly pleaded tort claims based on his alleged misconduct.

**Constitutional Considerations:** The allegations involve potential violations of Plaintiff's constitutional rights to due process and equal protection through systematic corruption of judicial

proceedings. These constitutional dimensions support allowing amendment to ensure that such serious claims receive substantive adjudication rather than procedural dismissal.

# VIII. OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE UNDER CCP § 425.16

## A. THE ANTI-SLAPP STATUTE DOES NOT APPLY BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE FROM PROTECTED ACTIVITY

*1. Legal Standard for Protected Activity Analysis*

California's anti-SLAPP statute provides protection only for lawsuits "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." CCP § 425.16(b)(1). However, the California Supreme Court has emphasized that not all litigation-related conduct constitutes protected activity. In *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002), the court clarified that the statute protects only "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," not conduct that corrupts or abuses the judicial process.

*2. Defendant's Conduct Falls Outside Protected Activity*

Criminal Conduct Is Not Protected Activity: The conduct alleged here—systematic perjury, fraud upon the court, and obstruction of justice—constitutes criminal activity that falls entirely outside the scope of protected petitioning activity. In Flatley v. Mauro, 39 Cal. 4th 299, 320 (2006), the California Supreme Court held that the anti-SLAPP statute "does not protect speech or petitioning activity that is per se illegal." The court explained that "criminal threats are not constitutionally protected speech" and the same principle applies to other criminal conduct occurring in litigation contexts.

Fraud Upon the Court Exception: Defendant's systematic campaign to defraud state courts through false statements under oath, concealment of material jurisdictional facts, and coordination with counsel to maintain false narratives constitutes fraud upon the court—conduct that has never been

considered protected petitioning activity. As the Ninth Circuit explained in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004), "extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud."

## B. EVEN IF PROTECTED ACTIVITY EXISTED, PLAINTIFF DEMONSTRATES CLEAR PROBABILITY OF PREVAILING

*1. Overwhelming Documentary Evidence of Systematic Fraud*

Tax Records Prove Jurisdictional Fraud: Plaintiff possesses tax records conclusively demonstrating that Carter was a New Jersey resident during the precise period when his counsel vehemently argued to New Jersey courts that he owned no property there and was not subject to personal jurisdiction. These official tax documents, filed under penalty of perjury with state and federal authorities, directly contradict the sworn representations made to avoid New Jersey jurisdiction. This creates an irrefutable documentary foundation proving systematic fraud upon the court.

Court Transcripts Document the Deception: A comprehensive paper trail of court transcripts and statements on the record proves that Carter's fraud upon New Jersey courts directly enabled him to escape paternity testing for decades. The transcripts show his counsel's repeated false representations about Carter's jurisdictional contacts, his property ownership, and his connections to New Jersey—all contradicted by the contemporaneous tax records establishing his actual residency status. This documentary evidence provides the "smoking gun" proving deliberate deception designed to corrupt judicial proceedings.

*2. Concrete Harm and Proximate Causation Established*

**Impact on Child Support and Upbringing:** While this is not a paternity case, Carter's successful evasion of paternity testing through fraudulent jurisdictional challenges had devastating consequences for Plaintiff, who bore sole financial responsibility for the upbringing of Carter's child, Rymir Satterthwaite. The systematic legal obstruction campaign prevented any determination of support obligations, leaving Plaintiff to shoulder financial burdens that should have been shared. This establishes clear causation between Carter's fraud and Plaintiff's concrete financial injuries.

**Fraudulent Liens and Due Process Violations:** The cover-up campaign that ensued from Carter's original fraud was the proximate cause of liens being placed on Plaintiff's home without her knowledge, robbing her of fundamental due process rights. These liens were placed simply because

she dared to challenge a public figure, representing a direct attack on her constitutional rights to access the courts and receive fair treatment under law. The secret nature of these liens—imposed without notice or opportunity to be heard—violates the most basic principles of due process established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

### 3. Pattern of Ongoing Misconduct

**Recent Evidence Confirms Continuing Scheme:** The December 2023 discovery of fraudulent liens, the 2024 seizure of approximately $26,000 from Plaintiff's escrow account, and the January 2025 Banking Commission findings provide concrete evidence that Carter's fraudulent scheme continues to operate and generate fresh harm decades after its inception. This recent evidence defeats any argument that the misconduct was completed or that Plaintiff's claims are time-barred.

## C. FEE-SHIFTING PROVISIONS SHOULD NOT APPLY

### 1. Public Policy Against Rewarding Systematic Fraud

**Defendant Should Not Benefit From His Own Wrongdoing:** Plaintiff vehemently objects to any award of attorney's fees to Defendant under CCP § 425.16(c). Allowing Carter to recover fees would reward him for twenty years of systematic evasion of child support responsibilities and judicial accountability. Such a result would pervert the anti-SLAPP statute's purpose of protecting legitimate petitioning activity by instead incentivizing and subsidizing criminal conduct designed to corrupt judicial proceedings.

**Inequitable Application of Fee-Shifting:** The anti-SLAPP statute's fee-shifting provisions are designed to deter frivolous lawsuits against defendants exercising constitutional rights, not to provide additional financial benefits to defendants who have systematically abused legal processes for decades. Awarding fees here would create a perverse incentive structure where wealthy defendants could escape accountability for serious misconduct while imposing additional financial burdens on their victims.

### 2. Constitutional Due Process Concerns

**Equal Protection Implications:** Fee-shifting in favor of a defendant who has systematically evaded legal responsibilities while imposing financial hardship on Plaintiff raises serious equal protection concerns. The Supreme Court has recognized that fee-shifting statutes must be applied in a manner consistent with constitutional principles of fairness and equal treatment under law. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262 (1975).

## D. PLAINTIFF'S ENTITLEMENT TO COMPENSATION DESPITE PRO SE STATUS

*1. Recognition of Pro Se Litigant Rights*

**Reasonable Compensation for Forced Litigation:** Despite her pro se status, Plaintiff respectfully requests that this Court recognize her entitlement to reasonable compensation for the substantial time and effort she has been forced to expend responding to Defendant's motions and pursuing this case. The Supreme Court has recognized that pro se litigants should not be penalized for their inability to afford counsel when responding to sophisticated legal challenges by well-funded defendants. *Kay v. Ehrler*, 499 U.S. 432, 438 (1991).

**Professional-Level Work Product:** Plaintiff has demonstrated through her comprehensive pleadings and legal research that her work product meets professional standards and has required substantial investment of time and expertise. Courts have recognized that pro se litigants who produce professional-quality legal work should be compensated accordingly when prevailing against defendants who have imposed unnecessary litigation burdens through frivolous motions.

*2. Deterrent Effect on Abusive Motion Practice*

**Preventing Strategic Burden-Shifting:** Compensating Plaintiff for her necessary litigation expenses serves important deterrent purposes, preventing wealthy defendants from using sophisticated motion practice to impose disproportionate litigation costs on individual plaintiffs. This principle ensures that access to justice is not effectively denied to those who cannot afford high-priced legal representation but possess meritorious claims against well-funded defendants.

### E. Conclusion on Special Motion to Strike

Defendant's special motion to strike fails on both prongs of the anti-SLAPP analysis. His conduct constitutes criminal fraud upon the court rather than protected petitioning activity, and Plaintiff has demonstrated overwhelming probability of prevailing through documentary evidence of systematic deception spanning multiple decades. The Court should deny the motion, decline to award fees to Defendant, and consider appropriate compensation for Plaintiff's forced expenditure of time and resources in responding to this meritless challenge to her legitimate claims for accountability and justice.

The anti-SLAPP statute was designed to protect honest participants in the judicial process, not to provide additional shields for defendants who have systematically corrupted that process through

criminal conduct. Applying the statute to protect Carter's fraudulent scheme would pervert its purpose and deny Plaintiff her constitutional right to seek redress for decades of systematic legal and financial abuse.

## IX.  CONCLUSION

Defendant's Motion to Dismiss and Special Motion to Strike represent a sophisticated but ultimately futile attempt to weaponize procedural protections designed to shield legitimate legal activity in order to escape accountability for systematic criminal conduct that has corrupted judicial proceedings across multiple jurisdictions for decades.

The gravamen of this case transcends ordinary litigation disputes—it exposes a deliberate and coordinated assault on the integrity of the judicial system itself. When a litigant systematically lies under oath about material jurisdictional facts, coordinates with multiple law firms to maintain false narratives across proceedings, and deploys vast financial resources to obstruct rather than facilitate justice, he has crossed the line from zealous advocacy into criminal conspiracy against the courts themselves.

The extrinsic fraud exception to Rooker-Feldman doctrine, the illegality exception to anti-SLAPP protections, and the well-established limitations on litigation privilege all converge to deny Defendant the procedural shields he seeks. These doctrines recognize that while our legal system must protect legitimate exercise of constitutional rights, it cannot permit those very protections to become weapons in the hands of those who would corrupt the judicial process for personal gain.

The First Amended Complaint transforms this case from preliminary allegations into a comprehensive legal blueprint supported by documentary evidence that reveals the scope and sophistication of Defendant's fraudulent scheme. Tax records that conclusively contradict sworn statements, court transcripts that document systematic deception, and recent Banking Commission findings that confirm ongoing misconduct create an evidentiary foundation that exposes decades of calculated obstruction designed to deny a child the right to know his father's identity while imposing devastating financial and emotional costs on those who dared to seek justice.

Most significantly, the continuing nature of Defendant's misconduct—evidenced by the 2024 seizure of $26,000 from Plaintiff's escrow account and the January 2025 Banking Commission findings—demonstrates that this is not a case about historical grievances but about ongoing violations that demand immediate federal intervention. California's continuing violation doctrine appropriately

refuses to reward sophisticated defendants who successfully conceal their wrongdoing by allowing them to escape accountability simply because they maintained their deception long enough for limitations periods to expire.

The public policy implications of this case extend far beyond the immediate parties. When allegations involve the systematic abuse of legal process by individuals wielding extraordinary wealth and influence, the public interest demands complete adjudication rather than dismissal on technical grounds that reward precisely the type of sophisticated obstruction alleged here. The protection of constitutional rights becomes critical when defendants possess vast resources that can be deployed to manipulate legal proceedings across multiple jurisdictions, creating a two-tiered system of justice where wealth and celebrity status provide effective immunity from legal accountability.

Federal courts have long recognized their responsibility to address conduct that "abuses the judicial process" because such conduct threatens "the integrity of the judicial system itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The systematic fraud alleged here represents precisely the type of extraordinary misconduct that demands federal intervention to vindicate constitutional principles ensuring equal justice under law.

Rather than reward Defendant's systematic obstruction of justice through procedural dismissal, this Court should deny Defendant's Motion to Dismiss and Special Motion to Strike, decline to award any fees to Defendant, grant Plaintiff's Motion for Leave to File First Amended Complaint, and allow this matter to proceed to discovery where the serious allegations of decades-spanning fraud can be proven through the very documentary evidence that Defendant's wealth and influence have thus far prevented from receiving proper judicial scrutiny.

The interests of justice, judicial efficiency, and constitutional principles all converge to require that this matter proceed to trial where Plaintiff can demonstrate Defendant's systematic corruption of judicial proceedings and obtain the damages and relief necessary to vindicate not only her individual rights, but the broader principle that no individual, regardless of celebrity status or financial resources, stands above the law. The alternative—allowing wealthy defendants to escape accountability for systematic criminal conduct through sophisticated procedural maneuvering—would represent a fundamental betrayal of the constitutional promise of equal justice under law that forms the bedrock of our democratic system.

1

2                                              Respectfully submitted,

3                                              s/Dr. Lillie M. Coley

4                                              Lillie M. Coley, PhD,
                                               3900 City Avenue Apt M420
5                                              Philadelphia, PA 19131
                                               215-620-0278
6                                              lmcoley@comcast.net

7                                              *Plaintiff In Pro Per*

8

9     DATED: September 17, 2025

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# CERTIFICATE OF
# SERVICE & COMPLIANCE

I HEREBY CERTIFY, that a true and correct copy of the foregoing Opposition of Motion to Dismiss & Strike was served electronically as required. U.S. Mail sent as courtesy, on September 17, 2025 to the attorney in record for defendant.  I also certify that the foregoing statements are true in the complaint.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment. Opposition to two(2) Motions enclosed are in compliance with the local court rules.

/s/Lillie M. Coley, PhD
*In Pro Se*
3900 City Avenue Apt M420
Philadelphia, PA 19131

# CERTIFICATION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 11

Under Federal Rule of Civil Procedure 11, by signing below, I/we certify to the best of our knowledge, information, and belief that this Opposition to Motion to Dismiss: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: September 17, 2025.

s/Lillie M. Coley, PhD
   3900 City Ave. Apt. M420
   Philadelphia, PA 19131