**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LILLIE COLEY,<br><br>                  Plaintiff,<br><br>     v.<br><br>SHAWN COREY CARTER,<br><br>                  Defendant. | Case No. 2:25-cv-04216-SPG-MAR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES [ECF NOS. 76, 86]** |

Before the Court is the Motion for Reconsideration, (ECF No. 76 ("Motion for Reconsideration")), filed by Plaintiff Lillie Coley ("Plaintiff"). Also before the Court is the Motion for Attorney's Fees, (ECF No. 86 ("Fees Motion")), filed by Defendant Shawn Corey Carter ("Defendant"). The Court has read and considered the Motions and concluded that they are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion for Reconsideration and GRANTS the Fees Motion.

**I.   BACKGROUND**

The Court previously summarized the background of this action in its November 4, 2025, order dismissing Plaintiff's complaint. (ECF No. 70 ("November Order")). In brief, this action relates to long-running domestic relations litigation occurring primarily in New

Jersey state courts. Plaintiff initiated this action on May 6, 2025, primarily alleging that Defendant perpetrated fraud on the New Jersey courts, resulting in the dismissal of Plaintiff's claims for lack of jurisdiction and the imposition of a lien on her house. Plaintiff asserted claims of deceit by concealment, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and unjust enrichment. (ECF No. 1 at 19-27).

On July 18, 2025, Defendant filed a special motion to strike Plaintiff's complaint pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. (ECF No. 26 ("Anti-SLAPP Motion")). California's anti-SLAPP statute permits "early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citation omitted). Courts evaluate such motions under a two-step framework. First, the moving defendant must "make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (citation omitted). Then, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim." *Id.* (citation omitted).

In its November Order, the Court granted Defendant's Anti-SLAPP Motion and dismissed Plaintiff's claims in their entirety. In granting the Anti-SLAPP Motion, the Court first concluded that Plaintiff's suit arose from protected activity because each of Plaintiff's claims was "premised on written and oral statements made during litigation, as well as conduct in furtherance of these statements." (November Order at 7). Second, the Court found that Plaintiff did not have a reasonable probability of prevailing on these claims because the claims were barred by California's litigation privilege, which prohibits nearly all derivative tort actions that are based on communications made in judicial proceedings. (*Id.* at 10). Because all of Plaintiff's claims were barred by the litigation privilege, the Court struck the complaint in its entirety. The Court denied leave to amend as futile because the litigation privilege posed an absolute bar to Plaintiff's recovery on her

claims. (*Id.* at 14-15). The Court also indicated that, pursuant to § 425.16(c)(1), Defendant was entitled to recover attorney's fees and costs as a prevailing defendant. (*Id.* at 13).

Plaintiff filed the Motion for Reconsideration on November 14, 2025, seeking reconsideration of the November Order. (Mot. for Reconsideration). Defendant opposed the Motion for Reconsideration on December 17, 2025, (ECF No. 98), and Plaintiff replied in support of the Motion for Reconsideration on December 24, 2025, (ECF No. 104).

Defendant filed the Fees Motion on November 19, 2025. (Fees Mot.). Plaintiff opposed the Fees Motion on December 15, 2025, (ECF No. 97), and Defendant replied in support of the Fees Motion on December 19, 2025, (ECF No. 99). On December 21, 2025, Plaintiff sought and was granted leave to file a sur-reply in response to Defendant's reply. (ECF No. 101).

## II. Plaintiff's Bankruptcy

As a preliminary matter, on December 10, 2025, Defendant filed a "Suggestion of Bankruptcy," indicating that Plaintiff recently filed for Chapter 7 bankruptcy. (ECF No. 94). In filings related to these Motions, Defendant reiterates Plaintiff's bankruptcy and requests "direction from the court on how or whether to proceed in light of the automatic stay" imposed by 11 U.S.C. § 362. (ECF No. 98 at 6; ECF No. 99 at 5). Plaintiff objects to a stay, arguing that no decision in the bankruptcy proceeding affecting the scope of the automatic stay will occur until after the motion hearing date in this case. (ECF No. 101 at 3-4; ECF No. 104 at 10). Elsewhere, Plaintiff argues that no stay is warranted because she is the debtor in the bankruptcy proceedings and is not barred from pursuing her own separate claims. (ECF No. 95 at 1-2).

Under § 362(a), the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of eight enumerated categories of proceedings. 11 U.S.C. § 362(a). The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws," allowing "the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340

-3-

(1978)). "The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court." *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993).

As to the action as a whole, the Court finds that the automatic stay does not apply because this is not a proceeding against Plaintiff. As a general matter, "[t]he automatic stay is applicable only to proceedings against the debtor." *In re Miller*, 397 F.3d 726, 729 (9th Cir. 2005); *see also In re Censo, LLC*, 638 B.R. 416, 424 (9th Cir. BAP 2022) ("The plain language of this provision indicates that the stay applies only to actions against the debtor."). Because this action was brought by the bankruptcy debtor, the case need not be stayed. As to the Motion for Reconsideration, the Court can decide the motion without implicating any of the enumerated categories of proceedings in § 362(a).

The Fees Motion poses a closer question. However, in the absence of contrary argument, the Court finds that a stay is not warranted because the Fees Motion does not fit into any of the categories of proceedings listed in § 362(a). As discussed above, this is not "an action or proceeding against the debtor," so § 362(a)(1) is inapplicable. While § 362(a)(2) may prohibit Defendant from "enforcement" of the Court's fee award, it does not require a stay of the Court's decision on the amount of such an award. Similarly, while § 362(a)(3) might prohibit Defendant from filing a new motion for fees after the bankruptcy petition was filed, it does not prohibit the adjudication of an earlier filed motion, since the Court's decision is not itself an "act to obtain possession of property of the estate." Finally, the mandatory stay in § 362(a)(6) of "any act to collect, assess, or recover a claim against the debtor" does not apply here because Defendant's recovery of attorney's fees for the successful Anti-SLAPP Motion is not a "claim" against Plaintiff. None of the other provisions of § 362(a) appear remotely applicable to this situation. Moreover, having already decided Plaintiff's liability for attorney's fees, delaying a decision on the *amount* of attorney's fees would seem to run counter to the purpose of bankruptcy proceedings to "enable a debtor to distribute its property in an orderly and equitable manner and obtain a 'fresh start' clear of liability for old debts." *Esoimeme v.*

*United Airlines, Inc.*, 369 B.R. 531, 536 (N.D. Cal. 2007) (quoting *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 364 (2006)). If the Court were to stay this decision until after the bankruptcy proceedings, Plaintiff would emerge from bankruptcy only to be immediately saddled with a new debt. In the absence of any specific argument in favor of a stay from either party, the Court concludes that a stay of the Fees Motion is not required.

### III.     Motion for Reconsideration

The Court now turns to Plaintiff's Motion for Reconsideration. Under Federal Rule of Civil Procedure 59(e), a party may move to have the court alter or amend its judgment within twenty-eight days of entry. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quoting 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)). However, the Rule "offers an extraordinary remedy," and should only be used "sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). Absent "highly unusual circumstances," reconsideration should not be granted "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). A Rule 59(e) motion "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890.

In the Motion, Plaintiff primarily argues that the Court erred in applying the anti-SLAPP statute because the New Jersey courts lacked subject matter jurisdiction for the proceedings before them. Plaintiff contends that the anti-SLAPP statute applies only to "lawful petitioning activity in a valid judicial proceeding," not "conduct arising from void, jurisdictionless, or fraud-tainted proceedings." (Mot. for Reconsideration at 7). Plaintiff argues that the Court overlooked material facts showing that the New Jersey courts

acknowledged that they lacked subject matter jurisdiction. Plaintiff also argues that the Court failed to consider the California Supreme Court's decision in *Flatley v. Mauro*, 39 Cal. 4th 299 (2006). (*Id.* at 7, 9).

As an initial matter, Plaintiff failed to raise her arguments about the New Jersey courts' subject matter jurisdiction in opposing Defendant's Anti-SLAPP Motion. In raising this argument for the first time in her Motion for Reconsideration, Plaintiff has made no attempt to show excusable neglect, a change in the law, or newly discovered evidence. Accordingly, her arguments are not a proper basis for reconsideration. *See 389 Orange St. Partners*, 179 F.3d at 665 ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). This is sufficient by itself to reject these arguments.

Even setting aside this deficiency, however, the Court is unpersuaded by Plaintiff's arguments. As mentioned above, courts apply a two-step test to evaluate anti-SLAPP motions. First, the moving defendant must "make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Herring Networks, Inc.*, 8 F.4th at 1155 (citation omitted). Then, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim." *Id.* (citation omitted). In granting the Anti-SLAPP Motion, the Court found the first step was met because all of Plaintiff's claims were premised on written and oral statements made in the New Jersey litigation. (November Order at 7). At the second step, the Court found that Plaintiff did not have a reasonable probability of prevailing on these claims because they were barred by California's litigation privilege. (*Id.* at 10). The fact that the New Jersey cases were dismissed for lack of subject matter jurisdiction does not alter the Court's conclusion at either of these steps.

At the first step, the anti-SLAPP statute applies to suits that "aris[e] from any act of that person in furtherance of the person's right of petition or free speech," which is defined to include statements made "before a legislative, executive, or judicial proceeding." Cal.

Civ. Proc. Code § 425.16(b)(1), (e)(1). The fact that the underlying judicial proceeding was later dismissed for lack of subject matter jurisdiction does not mean that statements made during that proceeding were not made "before a . . . judicial proceeding." While Plaintiff is correct that *orders* made in such proceedings may be void if issued without jurisdiction, dismissal for lack of subject matter jurisdiction does not deprive the proceedings of their inherent judicial character. Nothing in the plain language of the statute suggests otherwise. A contrary rule would arbitrarily exempt some proceedings from the protection of the anti-SLAPP statute, undermining its purpose "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Vess*, 317 F.3d at 1109 (citation omitted). Moreover, even if Plaintiff were correct that the lack of subject matter jurisdiction somehow rendered § 425.16(e)(1) inapplicable, § 425.16(e)(4) includes a catch-all provision for "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Thus, the Court did not err in finding that Defendant met his prima facie burden.

Similarly, at the second step, California law recognizes a privilege for any "publication or broadcast" that is made "[i]n any . . . judicial proceeding." Cal. Civ. Code § 47(b). This privilege is "absolute in nature," *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (citation omitted), and "immunize[s] defendants from tort liability based on" any theory aside from malicious prosecution, *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990). Here too, even if the publication was made in a proceeding that was dismissed for lack of subject matter jurisdiction, the privilege still applies because the statement was made in a "judicial proceeding." Cal. Civ. Code § 47(b). A dismissal for lack of subject matter jurisdiction does not render the proceeding in some way "non-judicial." A contrary rule would produce absurd results. For example, under Plaintiff's proposed rule, a defendant in a removed case that was later remanded for lack of subject matter jurisdiction could be subjected to a derivative tort lawsuit based on statements made before the federal court but not statements made before

the state court on either side of the removal. Similarly, under the facts here, statements made before a court to establish the court's lack of subject matter jurisdiction would be exempted from protection only if the adjudicating court finds those statements persuasive. Again, such a rule would undermine the purpose of the litigation privilege to "afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions," *Silberg*, 50 Cal. 3d at 213 (internal citation omitted). Nothing in the anti-SLAPP statute, the litigation privilege, or California case law requires such a result.

Plaintiff's citation to *Flatley* does not suggest otherwise. As the Court explained in its November Order, the *Flatley* court held that the anti-SLAPP statute "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." *Flatley*, 39 Cal. 4th at 317. However, this rule can only be applied at the first step of the anti-SLAPP analysis where "the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence." *Id.* at 316. In the November Order, the Court found this exception inapplicable because Defendant did not concede that his actions were illegal, and Plaintiff did not provide evidence conclusively establishing otherwise. (November Order at 8). At the second step, the *Flatley* court held that the litigation privilege is "relevant . . . in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Flatley*, 39 Cal. 4th at 323. The Court concluded that Plaintiff had not met her burden to overcome the litigation privilege, which, on its face, posed an absolute bar to Plaintiff's derivative tort claims. (November Order at 12-13). Plaintiff has not demonstrated any error in either of these conclusions. Instead, Plaintiff argues that *Flatley* stands for the broader proposition that the anti-SLAPP statute does not apply to "void, jurisdictionless, or fraud-tainted proceedings." (Mot. for Reconsideration at 7). But *Flatley* contains no such holding—indeed, it does not mention void or jurisdictionless proceedings at any point. Nor do Plaintiff's other case citations establish any such rule. Absent any contrary authority, the Court concludes that the dismissal of the

1  New Jersey proceedings for lack of subject matter jurisdiction does not prevent the
2  application of the anti-SLAPP statute to claims arising from statements made in those
3  proceedings.

4  Plaintiff next argues that the Court erred in denying leave to amend. Plaintiff
5  contends that the Court overlooked new factual allegations in her proposed amended
6  complaint, including allegations regarding attempted service, a timeline of concealment of
7  Defendant's New Jersey property, new jurisdictional facts, and specific acts of fraud on the
8  New Jersey courts. (Mot. for Reconsideration at 9). Contrary to Plaintiff's argument,
9  however, the Court did consider these proposed amendments in concluding that
10 amendment was futile. As the Court noted in the November Order, Plaintiff's proposed
11 amended complaint included four of the same claims, all of which were "premised on
12 alleged misrepresentations made in filings before the New Jersey courts." (November
13 Order at 15). The Court also discussed two additional claims added to the proposed
14 amended complaint, finding that these claims were also "premised on Defendant's
15 communications in the New Jersey litigation." (*Id.*). Because Plaintiff's claims were all
16 derivative tort claims premised on communications made in judicial proceedings, they
17 were subject to a special motion to strike and were barred by California's litigation
18 privilege. Additional factual allegations, including those highlighted by Plaintiff, would
19 be futile in the face of this absolute bar to Plaintiff's claims. Accordingly, the Court
20 reaffirms its November Order and DENIES Plaintiff's Motion for Reconsideration.

## IV. Motion for Attorney's Fees

### A. Defendant's Entitlement to Attorney's Fees

Finally, the Court turns to Defendant's Motion for Attorney's Fees. In diversity cases, "the law of the state in which the district court sits determines whether a party is entitled to attorney fees." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) (citation omitted). Under California's anti-SLAPP statute, except in relation to certain claims not relevant here, "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." Cal. Civ.

Proc. Code § 425.16(c)(1). This fee-shifting provision "applies in federal court, and declares that an award of attorneys' fees to a moving party is mandatory if a special motion to strike is granted." *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1084 (C.D. Cal. 2000). Thus, as the Court previously found, because Defendant prevailed on his special motion to strike, he is entitled to recover attorney's fees and costs. (November Order at 13).

Despite the statutory language, Plaintiff opposes the Fees Motion, raising similar arguments to those raised in her Motion for Reconsideration. Plaintiff contends that, "[b]ecause Defendant's fee motion depends on the assertion that he prevailed in relation to a valid underlying controversy, the void nature of the New Jersey case forecloses any entitlement to fees." (ECF No. 97 at 3). Plaintiff contends that the mandatory language of § 425.16(c) is effectively preempted by "constitutional limits on jurisdiction." (*Id.* at 4). Plaintiff also argues that Defendant's Fees Motion conflicts with positions Defendants previously took in the New Jersey litigation regarding the existence of jurisdiction. (*Id.* at 5). As such, Plaintiff argues the Fees Motion must be denied in its entirety.

The Court disagrees. Section 425.16(c)(1) requires the moving party to have prevailed "on a special motion to strike," not in the underlying controversy to which the stricken allegations relate. Defendant here has prevailed on a special motion to strike. It is therefore irrelevant that the New Jersey proceedings were dismissed for lack of subject matter jurisdiction. There is no conflict with "constitutional limits on jurisdiction" since the entitlement to attorney's fees relates solely to this action, over which the Court indisputably has jurisdiction. Defendant's positions as to the existence of jurisdiction in this action do not conflict with his positions taken in the New Jersey litigation. Based on the plain language of § 425.16(c)(1), the Court reaffirms its earlier holding that Defendant is entitled to recover attorney's fees and costs.

### B. Amount of Attorney's Fees

Having found that Defendant is entitled to attorney's fees, the Court will now determine the appropriate amount of fees. Under California law, in determining a

reasonable attorney's fees award, courts apply the "lodestar method," which requires "ascertain[ing] whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Reck v. FCA US LLC*, 64 Cal. App. 5th 682, 691 (2021) (citation omitted). Courts may then adjust the lodestar figure based on consideration of case-specific factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "The party seeking attorney fees has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Grossmont Union High Sch. Dist. v. Diego Plus Educ. Corp.*, 98 Cal. App. 5th 552, 590 (2023) (internal quotation marks and citation omitted).

Starting with the hourly rate, Defendant seeks an award of $1,062.50 per hour for work performed by a partner with 12 years of experience and $782 per hour for work performed by an associate with 4 years of experience. (ECF No. 86-1 ("Wirtschafter Declaration") ¶¶ 5-6). Defense Counsel attests that, based on their agreement with Defendant, these rates represent a 15% discount from the rates normally charged by Defense Counsel's firm. (*Id.*). Defendant cites numerous cases in which courts within this District have approved comparable rates for other attorneys of similar skill, experience, and reputation. (Fees Mot. at 13). Defense Counsel also provides a recent case from Los Angeles County Superior Court in which these attorneys were awarded a higher rate than that requested here. *See* (ECF No. 86-4). Finally, Defendant cites to Armanino's 2024 Law Firm Compensation, Billing Rate, and Benefits Survey for Southern California, which indicates that non-equity partners in the relevant location billed at rates between $877 and $1,110 and associates billed at rates between $532 and $975. (ECF No. 86-3 at 5, 8).

The Court finds the requested rates to be reasonable. As demonstrated by the Armanino survey, the rates charged by Defense Counsel are within the rates normally

1 charged by other attorneys in the same geographic area. This Court has also approved
2 comparable rates for attorneys with similar levels of experience at large law firms engaged
3 in civil litigation. *See, e.g.*, *OWLink Tech., Inc. v. Cypress Tech. Co., Ltd.*, No. 8:21-cv-
4 00717-SPG (KESx), 2023 WL 9061081, at *2 (C.D. Cal. Dec. 12, 2023) (Garnett, J.)
5 (approving hourly rates of $1200 for experienced partners and $900 for associates in civil
6 litigation involving large law firm); *Zheng v. Internet Corp. for Assigned Names &*
7 *Numbers*, No. 2:25-cv-04808-SPG-AJR, ECF No. 154 (C.D. Cal. Dec. 23, 2025) (Garnett,
8 J.) (approving rates ranging from $900 for associates to $1,250 for partners). Moreover,
9 the fact that Defendant has paid these rates "is itself highly relevant proof of the prevailing
10 community rate." *See Elser v. IAM Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D.
11 Cal. 1984) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319,
12 1326 (D.C. Cir. 1982) (alterations omitted)). Accordingly, the Court approves the
13 requested hourly rates.

14       As to the number of hours, Defendant seeks to recover for a total of 121.9 hours
15 spent on this case. This total includes 92.1 hours spent litigating this case before the Court
16 granted the Anti-SLAPP Motion, 19.3 hours spent on the instant Fees Motion, and 10.5
17 hours spent preparing the reply in support of the Fees Motion. (Wirtschafter Decl. ¶¶ 11-
18 14; ECF Nos. 86-2, 86-5). Defense Counsel indicates that it billed a total of 119.1 hours
19 litigating this case before the Court granted the Anti-SLAPP Motion, but it has reduced a
20 portion of these hours by 50% because those hours were split between this case and a
21 companion case filed by another plaintiff. (Wirtschafter Decl. ¶ 9; Fees Mot. at 15).
22 Defendant argues that it is reasonable to include other hours spent litigating this case, not
23 just those spent preparing the Anti-SLAPP Motion, because these activities were
24 inextricably intertwined with the Anti-SLAPP Motion.

25       In general, California courts have held that the anti-SLAPP statute's fee provision
26 "applies only to the motion to strike, and not to the entire action." *S.B. Beach Props. v.*
27 *Berti*, 39 Cal. 4th 374, 381 (2006) (citation omitted). However, California courts recognize
28 that the fee provision is "intended to compensate a defendant for the expense of responding

to a SLAPP suit. To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Wanland v. Law Offs. of Mastagni, Holstedt & Chiurazzi*, 141 Cal. App. 4th 15, 22 (2006) (citation omitted). Applying this rule, the Ninth Circuit has distinguished between situations where the anti-SLAPP motion applied to only some of the claims and situations where "the entire action . . . was subject to the motion to strike" and "no causes of action . . . survived it." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014). In the latter situation, because the defendant "incurred the expenses . . . in responding to a . . . baseless" lawsuit, courts may award fees "other than those exclusively incurred in" preparing the anti-SLAPP motion. *Id.*

Applying the rule from *Graham-Sult*, the Court agrees that Defendant is entitled to recover for hours spent litigating this case before the Anti-SLAPP Motion was granted. Like the district court in *Graham-Sult*, the Court here struck Plaintiff's complaint in its entirety, concluding that the entire lawsuit was barred by California's litigation privilege. Accordingly, Defendant is entitled to recover for time reasonably spent "responding to a lawsuit the [Court] found to be baseless." *Id.* This can include "time lawyers spent on the motion to dismiss, reply, other filings, document review, and preparing initial disclosures." *Id.* Here, in addition to time spent directly on the Anti-SLAPP Motion, Defendant seeks to recover for time spent reviewing the complaint, researching and preparing the other arguments raised in the motion to dismiss, responding to Plaintiff's motion for leave to amend, and preparing various procedural motions and responses necessitated by Plaintiff's filings. To the extent these actions were reasonably necessary to respond to the meritless SLAPP suit, the Court agrees that they are recoverable.

Turning to this next question, the Court finds that the hours incurred by Defense Counsel were reasonable. In addition to the Anti-SLAPP Motion and motion to dismiss, Defendant prepared and filed an ex parte application requesting an extension of time to file an answer, (ECF No. 16), an opposition to Plaintiff's motion for a continuance, (ECF No. 28), an opposition to Plaintiff's motion for leave to file an amended complaint, (ECF No.

1  45), an opposition to Plaintiff's request to defer ruling on the Anti-SLAPP Motion, (ECF
2  No. 51), and an objection to Plaintiff's sur-reply, (ECF No. 53). Each of these filings was
3  reasonably necessary to advance Defendant's litigation position and respond to Plaintiff's
4  filings, and each filing was ultimately successful on the merits. The total number of hours
5  spent on these filings—92.1 hours—appears reasonable given the length of Plaintiff's
6  filings and the complexity of the legal issues raised in Defendant's motion. As to the time
7  spent preparing the instant Motion and Reply, this time is recoverable and is within the
8  reasonable range of time required to prepare such a motion. *See, e.g.*, *CoreCivic, Inc. v.*
9  *Candide Grp., LLC*, No. C 20-03792 WHA, 2022 WL 16823696, at *6 (N.D. Cal. Nov. 8,
10 2022) (awarding fees for 30 hours spent on an attorney's fees motion, reply, and
11 negotiations in an anti-SLAPP case). In the absence of any specific objections from
12 Plaintiff, the Court finds the number of hours spent litigating this case to be reasonable.

13     Finally, the Court does not find any reason to adjust the lodestar amount in either
14 direction. Neither party has requested an adjustment to the lodestar. As to the factors
15 identified in *Ketchum*: (1) the issues presented in this case were somewhat complex but
16 were not novel; (2) Defense Counsel displayed ordinary skill in presenting these issues;
17 (3) the Court has no information about whether Defense Counsel was precluded from other
18 employment; and (4) Defense Counsel's fees were not contingent. Accordingly, the
19 lodestar figure appears appropriate to the Court. Based on the hourly rate and number of
20 hours approved above, the Court grants Defendant's request to recover $119,235.45 in
21 attorney's fees.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Reconsideration, GRANTS Defendant's Motion for Attorney's Fees, and awards Defendant $119,235.45 in attorney's fees.

**IT IS SO ORDERED.**

DATED: January 13, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE